21 N.J. Super. 383 (1952)
91 A.2d 265
VINCENT PICCOLO, PLAINTIFF-RESPONDENT,
v.
GIANT MILLS, INC., AND INDUSTRIAL MANAGEMENT CO., INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1952.
Decided September 22, 1952.
*384 Before Judges JAYNE, PROCTOR and SCHETTINO.
Mr. Hugh C. Spernow argued the cause for appellants (Messrs. Duffy & Ruggiero, attorneys).
Mr. Harry Chashin argued the cause for respondent (Messrs. Marcus & Levy, attorneys; Mr. Hyman W. Rosenthal, of counsel and on the brief).
*385 The opinion of the court was delivered by JAYNE, S.J.A.D.
In circumstances to which more specific reference will presently be made, the plaintiff on the morning of Saturday, November 19, 1949, fell down an unguarded elevator shaft from the first floor to the basement of the building situate at No. 72 Grey Street in the City of Paterson. In an action prosecuted by him to recover compensatory damages for the bodily injuries and incidental losses sustained by him in the mishap, the jury, after the voluntary dismissal of the alleged cause of action against the defendant Bornstein, rendered a verdict in favor of the plaintiff against the two corporate defendants with an award of $18,000 damages. An application for a new trial was denied. The defendants resort to their right of appeal.
In pursuing our review of the case, our attention is attracted by the appellants to the following inquiries. Did the court err in submitting to the jury the issue implicating the plaintiff's contributory negligence or assumption of risk? Did the court erroneously decline to charge the defendants' request to instruct the jury concerning the principle of law which circumscribes the duty owing to an invitee within the boundaries of the invitation?
The evidence revealed that the defendants were in control of the maintenance of the four-story building occupied by tenants for industrial purposes in which the freight elevator was located. Affixed to the wall of the elevator was a sign stating:
"This is not a passenger elevator. It is unlawful for any person other than the operator or those necessary to handle freight to ride on this elevator."
For protective purposes the elevator shaftway at the first-floor level where the misfortune occurred was intended to be guarded in the absence of the car at that location by a gate of vertical wooden bars, which was designed to move upward and downward propelled by counter-balanced weights suspended on pulleys. The action of the weights was controlled *386 by the contact between a trip-catch or lock on the car, and iron brackets fastened to the gate so that when the elevator car moved from the floor entrance to it the gate would descend. The operation of the elevator was subject to the "U-Drive" practice. No regular attendant was employed for such service. The movements of the car were manually controlled by means of a cable. There was, as one would naturally suppose, a stairway leading from the main floor to the upper floors.
The plaintiff was the shipping clerk of Fashion Sport Shoe Company occupying the third floor of the building. His regular weekly employment continued until noon on Saturdays. His activities on the morning of November 19, 1949, and the existing conditions and accompanying circumstances may, for present information, be stated in a summary fashion.
At about 10 o'clock in the forenoon he transported some packages from his place of employment on the third floor to the ground floor by means of the elevator and delivered them to the post office by automobile. Upon his return to Grey Street, he procured from a nearby diner some coffee in containers for some of his co-workers and re-entered the building. Noticing that the gate continued to be up in the position in which it was at his departure, he walked into the elevator. At that moment he recalled that he had left his shipping memoranda book in his automobile, to which he then returned. Having obtained the book, he forthwith proceeded back to the building. Let him tell what happened: "So I walked across the street to the door (of the building), went in and, as before, I saw the gate up and I thought I saw the elevator there and I fell down the shaft." "The light was very dim."
There was, however, evidence of existing conditions of significant relevancy to which we may appropriately allude. The artificial illumination for the hallways customarily controlled by the representatives of the defendants was not switched on. The entrances to the door of the building and *387 to the elevator do not face each other but are at right angles. Entering through the entrance to the building, one would walk a few feet to the right, then go forward eight to ten feet and turn left to the elevator shaftway. The elevator car itself had no ceiling or doors. The plaintiff knew that no business was being conducted on this Saturday morning by the tenants of the first, second, and fourth floors. The plaintiff himself had shortly before stationed the elevator at the ground floor. There was no signal device other than the gate to forewarn one of the absence of the elevator car.
Certainly the plaintiff could with no lack of prudence rely to some extent on the indications of the raised gate. It may be inferred from his statement that he "thought I saw the elevator there" that he looked. Cf. Murphy v. Bernheim & Sons, 327 Pa. 285, 194 A. 194 (Sup. Ct. 1937).
True, the plaintiff had knowledge that on some occasions in the past the gate had failed to lower, one of which occurred two weeks prior to the mishap, but the plaintiff had then received an assurance from the superintendent of the building that it would be repaired and the plaintiff had noticed that the gate had since operated normally. This circumstance merely augments the variety of facts to be considered in all their phases and disguises.
Time does not permit and our present purpose does not require us here to move into view the avalanche of decisions relative to the judicial propriety of submitting an issue of contributory negligence or its affinity assumption of risk to the jury, or resolving its existence as a matter of law. The subject is weather-beaten. Assuredly where reasonable differences of honest opinion enter concerning the care exercised by the plaintiff and its contributory nature, there the right of the court to dismiss is put to flight.
This is not a misadventure in which the plaintiff "groped in the dark" or entered premises with which he was unfamiliar. We are not persuaded by our conception of the evidence in this case that contributory negligence or assumption of risk on the part of the plaintiff clearly appeared *388 conclusively as a fact or by necessary exclusive inference. Bacak v. Hogya, 4 N.J. 417, 426 (1950). Vide, also, Eggert v. Mutual Grocery Co., 111 N.J.L. 502 (E. & A. 1933).
The remaining inquiry embraces the refusal of the court to adopt in his instructions to the jury two requests presented on behalf of the defendants. Obviously the requests embody merely quotations of an abstract principle of law excerpted from one of the several cited cases. Cf. Hoffman v. Trenton Times, 125 N.J.L. 450 (E. & A. 1940).
Moreover the manifest object of their presentation to the court was to introduce to the jury as an issue of fact whether the plaintiff in undertaking to use the elevator in returning to the third floor without any freight was exceeding the invitation of the defendants as expressed on the sign attached to the wall of the car and to which we have hereinbefore referred.
To squeeze the invitation into a one-way ticket which privileged the tenants' employees to use the unattended elevator for the transportation of freight (perhaps several successive shipments) to the main floor and required them to walk back is not amenable to reason. Indeed, there is evidence that the plaintiff had additional shipments to make on the morning of the accident. His status as an invitee, in our opinion, was not a jury question in the circumstances.
The judgment is affirmed.