EMMA C. MALMQUIST v. CLARENCE R. LEEDS
AND ANOTHER.[1]

June 17, 1955.

No. 36,552.

[1]Reported in 71 N. W. (2d) 863.

*William H. DeParcq* and *Charles Alan Wright,* for appellant.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *David W. Nord,* for respondents.

DELL, CHIEF JUSTICE.

This is an action for damages for personal injuries. Plaintiff appeals from a judgment entered pursuant to an order granting defendants' motion for judgment notwithstanding the verdict in favor of the plaintiff.

On September 4, 1950, the plaintiff fell down an open stair well while visiting at the home of the defendants located on the shore of Horse Shoe Lake near Backus, Minnesota. The defendants are husband and wife, and the defendant Clarence Leeds is the plaintiff's

brother. Because of the nature of the questions involved on this appeal, it is necessary to examine the facts in some detail.

On August 1, 1950, the defendants commenced alteration of their house for the purpose of converting it into a permanent year-round residence. Among other things, the remodeling involved the enlargement of the kitchen and basement and the construction of a new stairway down into the basement. Prior to the alteration, the house was shaped somewhat like a "U," with the front of the house facing south on the lake and two wings at the rear occupied by bedrooms. Between the two wings were a kitchen and a concrete walk which led from the kitchen door to the back yard. A short distance north of the kitchen the concrete walk joined a flagstone sidewalk which led to the parking area. The kitchen door was customarily used as the entrance to the house except when coming from or going to the lake, in which event the front door was used. In the course of the alterations, a bulldozer was used to make a large, ramp-like excavation at the rear of the house in order that dirt could be removed from underneath the old kitchen and dining room for the new basement. The dirt from this excavation was pushed up into the back yard about 40 feet from the kitchen in a pile approximately nine feet high and 25 feet long. The concrete walk and a portion of the flagstone sidewalk had been removed. The new kitchen wall, which was in the studding stage on the day of the accident, was north of the old wall and flush with the rear wall of the east wing bedroom. A plank, 12 feet long and one foot wide, extended from the flagstone sidewalk across a corner of the excavation and onto the new kitchen floor. There is some conflict in the testimony as to whether the flooring had been fully completed. The new basement stair well was located where the concrete walk had previously been, just outside the old kitchen door.

The plaintiff and her husband had a standing invitation to visit at the defendants' home, and the plaintiff had been there on several previous occasions, the last one being in 1948. On the day in question, the plaintiff, her husband and daughter, and Mr. and Mrs. Liedstrom, another brother and sister-in-law of the plaintiff, arrived at the defendants' home at about 7:30 or 8 in the evening. It was

dark outside and the defendant Mrs. Leeds was preparing to retire. When Mrs. Leeds heard the car arrive she turned on an outside light located on the eaves of the east wing bedroom[2] and went out the front door and across the lawn to the garage to meet her guests. The light which she turned on partially illuminated the back yard but not the area where the concrete walk had been located in front of the old kitchen door. The defendants' son and his fiancee, who had just returned from fishing, also went over to the car to greet the visitors and then went back to unload their fishing tackle. Mr. Leeds, who was taking a shower, remained in the house.

Mrs. Leeds and the visitors began to converse, walking in the general direction of the back entrance and around two sawhorses which Mr. Leeds had previously placed across the flagstone sidewalk. While the ladies were chatting at the rear of the east wing bedroom, Mr. Liedstrom and Mr. Malmquist left them and walked across the plank and onto the new flooring. Mr. Liedstrom, who had visited the home about two weeks previously while alterations were in progress, knew of the open stair well and "it just dawned on me" that the back entrance might not have been completed. Looking "real close" he realized that the open stair well was still there, and the two men returned to the group without mentioning it. Although the defendants have suggested that the men merely intended to inspect the progress of the construction work, the only reasonable inference that can be drawn from the evidence is that they intended to go into the house through the kitchen door but on closer inspection realized that this entrance was not accessible.

After the men had rejoined the group, Mrs. Leeds engaged Mr. Liedstrom in conversation. The plaintiff then said "Let's go in" and started walking along the sidewalk toward the back entrance. Mrs. Leeds testified that she did not hear the plaintiff make this remark, but plaintiff's daughter, who was standing at approximately the same distance from the plaintiff as Mrs. Leeds, said that she had heard it. Followed at a short distance by Mrs. Liedstrom, the plaintiff walked

---

[2]While there was evidence to the effect that the light switch which Mrs. Leeds turned on also operated two lights on a pole near the garage, the plaintiff emphatically denied that they were lit on the night in question.

across the plank, took a few steps on the new flooring, and fell into the open stair well, sustaining extensive injuries. Only a few minutes elapsed between the time the Malmquists and Liedstroms arrived and the happening of the accident. The jury returned a verdict in the plaintiff's favor for $62,500.

The trial court granted defendants' motion for judgment notwithstanding the verdict on the ground that the plaintiff was guilty of contributory negligence as a matter of law. Unless the evidence, which must be viewed in the light most favorable to the verdict, is so clear and conclusive as to preclude a reasonable difference of opinion among fair-minded men, the court should not have substituted its judgment for that of the jury.[3] The parties agree, and properly so, that, as a general rule, one who is injured while walking in an unfamiliar situation in total darkness is, in the absence of special circumstances, guilty of contributory negligence as a matter of law.[4] Plaintiff contends, however, that this so-called "step-in-the-dark" rule does not apply to her because, among other reasons, she was not "unfamiliar" with the premises. She had visited the defendants' lake home on six occasions during the ten years that the defendants had owned it. During these visits, which lasted two or three days, she had become familiar with the premises generally and had repeatedly used the kitchen-door entrance and the path leading to it. In her own words the entrance "was so handy we would run in and out there dozens of times a day." She argues that, while the area in which she fell was dark, the lighting conditions were not materially different than on the many occasions when she had walked there with complete safety. Defendant, on the other hand, argues that the many physical changes in the area which the plaintiff saw, or reasonably should have seen, constituted a warning which she

[3]Waldo v. St. Paul City Ry. Co. 244 Minn. 416, 70 N. W. (2d) 289; Weller v. Northwest Airlines, Inc. 239 Minn. 298, 302, 58 N. W. (2d) 739, 741; LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 212, 21 N. W. (2d) 522, 526.

[4]Huyink v. Hart Publications, Inc. 212 Minn. 87, 89, 2 N. W. (2d) 552, 553; Plahn v. Masonic Hall Bldg. Assn. 206 Minn. 232, 288 N. W. 575; Annotation, 163 A. L. R. 587.

completely failed to heed, thereby exposing herself to an unreasonable risk of injury.

The determination of whether the plaintiff used ordinary care under the circumstances is a difficult one. An examination of the decisions involving this type of accident reveals that, for the most part, the result is governed by the particular circumstances of each case rather than the strict application of any rule at law. In most of the cases holding the plaintiff contributorily negligent as a matter of law, it appears that the plaintiff was totally unfamiliar with the premises involved.[5] However, even where the premises were unfamiliar, the question of plaintiff's contributory negligence has been held to be one of fact for the jury where, for example, the circumstances were such that an ordinarily prudent person might be lulled into a false sense of safety, or where the evidence shows that the plaintiff did exercise caution commensurate with the circumstances.[6] For example, in Iverson v. Quam, 226 Minn. 290, 32 N. W. (2d) 596, we held that the issue of plaintiff's contributory negligence should have been submitted to the jury where she entered and closed a door marked "Ladies" and then fell down an unlighted stairway in the darkness while reaching for what she thought was a light string.[7]

A careful examination of the evidence in the instant case compels us to conclude that the issue of plaintiff's contributory negligence should properly have been left to the jury. According to the plaintiff, the route which she traveled on the evening of the accident was much the same as it always had been except for the plank and the ditch beneath it which appeared to her to be about two feet deep and two feet wide. There is considerable conflict in the evidence as to

[5]See, e.g., Sartori v. Capitol City Lodge, 212 Minn. 538, 4 N. W. (2d) 339, and cases collected in Annotation, 163 A. L. R. 587, 590, et seq.

[6]See, e.g., Maher v. Voss (Del.) 98 A. (2d) 499, 503, where it was held that plaintiff might have been justifiably misled by appearances into believing it was safe to step farther into what seemed to be a dimly lit closet.

[7]Cf. Plahn v. Masonic Hall Bldg. Assn. 206 Minn. 232, 288 N. W. 575, where we held that the plaintiff, who in search of a lavatory opened an *unmarked* door and fell down a darkened stairway, was guilty of contributory negligence as a matter of law.

how much of the construction work was illuminated by the yard light which Mrs. Leeds had turned on. The plaintiff testified that the area in which the car was parked was "well lighted" but that the light gradually diminished as she walked toward the rear of the house until it became completely dark in the immediate vicinity of the old kitchen door. Both the plaintiff and her daughter testified that the light did not disclose any odd boards or other debris which the defendants claim were there. Mr. Liedstrom also was unable to remember seeing any debris. Before the plaintiff started across the plank she saw a "small pile of dirt" to her right but did not pay any particular attention to it. She vaguely remembered seeing one or two sawhorses. She recognized the studding of the new rear wall of the kitchen but thought "they are putting in their cupboards and their new kitchen window," which she knew they had planned. When she got to the end of the plank she walked on a hard surface in the same location as the old cement walk, which appeared to her to be safe. She proceeded a few steps toward the old kitchen door, when suddenly she stepped into space.

It is not unreasonable to assume that, in the semidarkness with which the plaintiff was confronted, an ordinarily prudent person would not have appreciated the full extent of the construction work that was being done. While the plank clearly should have been regarded as an indication of the existence of the ditch or hole over which it crossed and a warning, at least to that extent, it does not follow that it necessarily constituted a warning of an excavation several feet from it that could be reached only after walking on solid flooring that appeared firm and passable. After having crossed the plank, an ordinarily prudent person might well have been misled into a sense of security by reason of the apparently safe flooring located in the same area as the old concrete walk leading to the back door.

Of considerable importance is the absence of any verbal warning of danger, particularly since there was ample opportunity for such a warning to be given. While the defendants argue that the failure to warn goes only to the issue of their negligence, we think it has a substantial bearing on the question of plaintiff's contributory

negligence. As we said in Gordon v. Freeman, 193 Minn. 97, 103, 258 N. W. 19, 21:

"* * * The defendant having extended the invitation to her [plaintiff] to enter the building and having escorted her to the door thereof, thereby indicating the mode of entrance, plaintiff had a right to assume that he would not leave her so near to a hidden danger without some word of warning."

Likewise, we think that the plaintiff had a right to assume that Mrs. Leeds would not have walked with the group past the saw-horses, beyond the sidewalk leading to the front door, and to a point close to the east wing bedroom, which was near the back entry and the plank leading to it, without telling her or in any manner indicating that it was dangerous to attempt to enter the house through the back door as was the custom.

Viewing the evidence in the light most favorable to the plaintiff and giving her the benefit of all reasonable inferences to be drawn therefrom, we do not feel that it can be said, as a matter of law, that she was totally unfamiliar with the situation at the time of the accident.[8] But of greater significance, in our opinion a jury could reasonably find that the absence of a warning, the presence of solid flooring upon which the plaintiff walked immediately prior to falling, and the other particular circumstances of this case all contributed in misleading her into a false sense of safety upon which she was justified in relying. We must, therefore, conclude that the question of the plaintiff's contributory negligence presented a fact issue for the jury.

■ In view of our conclusion that the trial court erred in granting judgment notwithstanding the verdict on the ground of plaintiff's contributory negligence, we must also consider the defendants' contention that the evidence does not support a finding of actionable

[8] Cf. Keller v. Elks Holding Co. (D. N. D.) 109 F. Supp. 545, affirmed (8 Cir.) 209 F. (2d) 901, where the court appears to base its determination that the plaintiff was contributorily negligent as a matter of law on his own testimony to the effect that he knew he was in a changed and unfamiliar surrounding.

negligence on their part. The parties concede, and correctly so, that the rule of law governing this determination is set forth in Restatement, Torts, § 342:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to warn them of the condition and the risk involved therein."

The application of this rule to the facts of the instant case leaves no doubt that the evidence amply supports a finding of negligence on the part of the defendants. The defendants clearly knew of the condition created, and they realized or should have realized that it involved an unreasonable risk to the plaintiff. The excavation into which the plaintiff fell was obviously a very dangerous condition and was located across the path normally used as an entrance to the house. By its very nature it constituted a serious risk to any visitor who unwittingly attempted to use the back entrance.[9] The defendants' realization of the danger involved is clearly demonstrated by the fact that, when Mr. Liedstrom had previously visited them on August 21, he had complained of the danger of the excavation and Mr. Leeds had secured the kitchen door to prevent anyone from walking from the house out into the open stair well. Nor can there be any serious question that the utility in maintaining the condition was slight as compared to the risk involved. Additional precautionary measures could just as easily have been taken to obviate the

---

[9]Cf. Mitchell v. Legarsky, 95 N. H. 214, 60 A. (2d) 136, holding that a torn piece of linoleum at the edge of the top of a flight of steps constituted an unreasonable risk, and Rushton v. Winters, 331 Pa. 78, 200 A. 60, where a weak and shaky porch railing was held to be an unreasonable risk.

danger to someone approaching from the outside of the house.[10] As pointed out by the Restatement,[11] the unreasonableness of the risk is dependent in part upon the character of the invitation involved. In the instant case there was no time limitation on plaintiff's invitation, nor did she go beyond the area to which the invitation extended. By virtue of her previous experience she was completely justified, in the absence of sufficient notice to the contrary, in assuming that her invitation included the customary manner of entering the house.

The defendant also had reason to believe that the plaintiff would not discover the condition or realize the risk involved. The lighting conditions on the evening in question have already been discussed at length. A portion of the yard was visible, but the area immediately surrounding the stair well was shrouded in darkness. While a licensee must take the premises as he finds them, the landowner nevertheless owes him the duty of not knowingly exposing him to hidden dangers.[12] Nor is a landowner relieved of this duty to warn merely because the condition is open and obvious during the daylight and becomes dangerous only when concealed by darkness; provided, of course, that the owner has reason to believe the licensee may enter at night.[13] It is conceded that the invitation in the instant case extended into the nighttime, and the defendants under the evidence had no reason to assume that the plaintiff knew of the open stair well, nor do we feel that they could reasonably assume that she would discover it by the ordinary use of her faculties.

The evidence not only supports the existence of a duty on the part of the defendants to warn the plaintiff of the risk but also justifies the finding that they failed to use reasonable care to give

[10]See, Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67.

[11]Restatement, Torts, § 342, comment f.

[12]Page v. Murphy, 194 Minn. 607, 261 N. W. 443; Maher v. Voss (Del.) 98 A. (2d) 499; Prosser, Torts, § 78, p. 631; Annotation, 25 A. L. R. (2d) 598.

[13]See, e.g., McDonald v. Cuyuna Range Power Co. 144 Minn. 271, 175 N. W. 109; Restatement, Torts, § 342, illustration 4 and comment f. But cf. Reardon v. Thompson, 149 Mass. 267, 21 N. E. 369; Elliman v. Gombar, 86 Ohio App. 352, 91 N. E. (2d) 801.

such a warning or, in lieu thereof, to make the condition reasonably safe. Concededly no verbal warning was given, and the physical surroundings in themselves cannot be said to have constituted a sufficient warning as a matter of law. The only barricades present were two sawhorses located considerably north of the stair well, and these were by-passed by Mrs. Leeds when she walked with the group toward the back entrance of the house. Most of these factors have been previously discussed and do not require additional comment. We conclude that the evidence taken as a whole sufficiently sustains the finding of liability on the part of the defendants.

■ Pursuant to the provisions of Rule 50.02(2) of the Rules of Civil Procedure, the trial court also considered and denied defendants' motion for a new trial. None of the grounds urged in that motion, except that the evidence does not justify the verdict, have been raised on this appeal, and consequently they cannot be considered by this court. Similarly, the amount of the verdict has not been challenged in any way on this appeal, and it must therefore be presumed that it is justified by the evidence. The judgment appealed from must be reversed, and the verdict in favor of the plaintiff reinstated.

Reversed and verdict reinstated.