ICIA ELLEN TRYBA, Appellant, *v.* RICHARD E.
FRAY, Individually and Doing Business as
FRAY WESTERN PLUMBING & HEATING CO.,
RITA BEEKS, Administrator of the Estate of
Bob Beeks, Deceased, and SECURITY PROPER-
TIES CORPORATION, Respondents.

No. 4148

May 27, 1959            339 P.2d 753

See also 74 Nev. 320, 330 P.2d 499.

*Stewart, Horton and Campbell,* of Reno, for Appel-
lant.

*Goldwater, Taber and Hill,* of Reno, for Respondent
Richard E. Fray.

*Vargas, Dillon and Bartlett,* and *Alex A. Garroway,*
of Reno, for Respondent Bob Beeks.

*Peter Echeverria,* of Reno, for Respondent Security
Properties Corporation.

**OPINION**

By the Court, BADT, J.:

This is an appeal taken by the plaintiff below from a judgment in favor of defendants below resulting from a directed verdict to such effect. The directed verdict was ordered after plaintiff had completed presentation of her evidence, on the ground that upon the facts it appeared as a matter of law that the plaintiff was guilty of contributory negligence. On the presentation of the motion for directed verdict plaintiff's evidence and all inferences reasonably to be drawn from it were, of course, to be deemed admitted and interpreted in the light most favorable to the plaintiff. Gordon v. Cal-Neva Lodge, Inc., 71 Nev. 336, 291 P.2d 1054. As hereinafter noted, the plaintiff's asserted contributory negligence arose out of circumstances under which she was proceeding in complete darkness, and the directed verdict for the defendants was the result of the establishment by the court, as a matter of law, of the standard of care devolving upon the plaintiff under the circumstances. Our conclusion is that the standard of care required of the plaintiff under the conditions hereinafter recited depended upon factual issues subject to jury determination, and that it was therefore error to take the case from the jury.

The cases relied upon by both parties to this appeal deal almost exclusively with the question of the plaintiff's alleged contributory negligence when plaintiff has proceeded in darkness in an unfamiliar area and which have generally been referred to as "the darkness cases" or "the step in the dark cases," with a natural reference to a determination whether or not the plaintiff's actions established contributory negligence as a matter of law

under what a number of the cases referred to as "the darkness rule" or "the step in the dark rule." In this opinion, for want of a better term, we use the expression "the darkness rule," while recognizing that such so-called "rule" is but a specialized example of certain instances in which reasonable minds cannot be said to differ upon the standard of care to be exercised by the plaintiff in his own behalf.

Appellant was employed by Nevada Transit Company, tenant of a building in Reno (the premises in question) owned by respondent Security Properties Corporation, which engaged respondent Fray to dig a ditch inside the building. Fray employed respondent Beeks. Appellant's employment had commenced May 2, 1956 and continued to the time of her injuries on December 6, 1956. That part of the premises involved comprised a room some 26 feet wide, extending back into a larger area. At the west end of the room was a stairway leading up to the mezzanine floor where appellant worked. On the north side of this area was a pair of sliding doors, for the admission of trucks, one of which would open in a westerly and one in an easterly direction. A few feet to the east was a door facing east in a "jog" in the building which would provide entry to the supply room or bus shop, which extended some 40 feet further north, and thence through another door and hallway back into the room where the accident occurred. Both of the doors last mentioned were locked with padlocks to which appellant had keys. It was necessary to cross this room (whether by a diagonal course, a course along the north wall and sliding door, or a course leading south and then west) in order to reach the stairs to the mezzanine. Any one of these courses would in all probability cross the ditch herein described. On the morning in question the east sliding door was open about 2½ feet and appellant made her entrance through this opening. This is the precise point inside the building at which she would have arrived through the two locked doors some 16 or 17 feet to the east if she pursued that course. She had so entered several times in the past when the sliding door was open, and "depending on if the door

was open." Whether she entered through the open sliding door or unlocked the two locked doors to the east thereof, she would proceed across the room to the stairway leading to the mezzanine.

When leaving her work at four o'clock on the afternoon of December 5, 1956, the day before her injury, she took a route in a southerly direction from the stairway, proceeding some 12 or 15 feet southerly, to leave the outgoing mail at the service department, thence approximately the same distance at right angles easterly, then some 20 feet northerly and out of the building. For a number of days men had been at work constructing a sump some 25 feet south of the sliding doors. When she left her work on December 5, she noticed men digging at the sump but did not recall that men were working at the sliding doors. Sometime on the afternoon of December 5 the workmen started digging a ditch from the sliding doors to the sump. On leaving she observed no ditch by the door. She did not recall seeing any work being done between the sump and the doors or seeing any broken concrete. During the day she had heard the compressors and jack hammers working. The evidence is not conclusive as to whether the ditch in the immediate area of the sliding doors was dug before or after appellant's departure at four o'clock that evening.

On the morning of December 6 she approached the partly open sliding door. At the time of her entry through this door she encountered a man departing through the doorway, who said nothing to her. The sun was shining on the snow on the ground and appellant was so blinded that she could not see past the doorway when she entered it. She walked into what appeared to her as a pitch-black place and could not see where she was going. She took one step, possibly more, and fell into a ditch that had been constructed extending from the sliding door to the sump, and was injured by the fall. Material excavated from the ditch was piled along its easterly bank except for a distance of some feet south of the sliding door, so that there was no pile or mound to interrupt appellant's progress from her point

of entry to the ditch itself. The ditch was unguarded and no warning signs were posted or other warning given.

As noted, the court directed a verdict for the defendants upon the theory that appellant was guilty of contributory negligence as a matter of law under the so-called "darkness rule."

That contributory negligence as a matter of law attaches where a condition of darkness renders the use of plaintiff's eyesight ineffective is applicable only when a person comes into an unfamiliar situation has been established as a recognized rule for a great many years. Contributory negligence does not attach as a matter of law when the plaintiff is entering familiar premises. Malmquist v. Leeds, 245 Minn. 130, 71 N.W.2d 863; Huus v. Ringo, 76 N.D. 763, 39 N.W.2d 505; Erickson v. McKay, 207 Wis. 497, 242 N.W. 133; See 35 Cal.Jur. 2d Negligence sec. 227; Annotation 163 A.L.R. 587.

In many of the cases cited in the A.L.R. annotation and in the other cases cited supra where questions arose as to the applicability of "the darkness rule," the court held that the case was one for the jury. We note the language used in Piccolo v. Giant Mills, 21 N.J. Super. 383, 91 A.2d 265, 267, in which a tenant's employee fell into an unguarded elevator shaft by stepping into it from a dark hallway:

"Time does not permit and our present purpose does not require us here to move into view the avalanche of decisions relative to the judicial propriety of submitting an issue of contributory negligence or its affinity assumption of risk to the jury, or resolving its existence as a matter of law. The subject is weather-beaten. Assuredly where reasonable differences of honest opinion enter concerning the care exercised by the plaintiff and its contributory nature, there the right of the court to dismiss is put to flight.

"This is not a misadventure in which the plaintiff 'groped in the dark' or entered premises with which he was unfamiliar. *  *  *"

Reference is made by both parties to Nevada Transfer & Warehouse v. Peterson, 60 Nev. 87, 89 P.2d 8, 99 P.2d 633, and Seavy v. I.X.L. Laundry, 60 Nev. 324, 108 P.2d 853. Neither of these cases can be said to be in point, although both involved application of the "darkness rule." It is unnecessary to discuss these cases. We may note, however, that in both cases the plaintiff's contributory negligence was held to be a question of fact for the jury.

Respondents contend that contributory negligence attached because the plaintiff did not pursue her "usual and customary" route. It is our opinion that the contention is not well·taken. No rule requiring plaintiff to pursue a usual and customary route can supply the requirement of the "darkness rule" that it apply only in the case of entering an unfamiliar area. In addition to this we may note that it would appear that entry through the sliding doors appeared to be the usual and customary route when one of the sliding doors was open, and further, that for plaintiff to have entered through the two padlocked doors to which she had keys would have entailed simply traversing a longer route to get to the precise point at which she entered through the opened sliding door.

In Packard v. Kennedy, 4 Ill. App.2d 177, 124 N.E.2d 55, 60, the court said:

* * * [T] his is not a case where, as defendants suggest, plaintiff had two choices, one dangerous and one safe, and deliberately chose the perilous course, for although reasonable men might differ as to the wisdom of plaintiff's choice, clearly her conduct was not of such a nature that all reasonable men would agree that she was palpably negligent, and therefore, that issue was properly submitted to the jury."

Respondent Beeks further supports such directed verdict in the following language: "[Appellant] attempts to distinguish her situation [from those in which the

injured person has proceeded in darkness in an unfamiliar area] because her employment for some time previous to the accident acquainted her with the large room where the accident occurred and she was familiar with the area and had traversed it many times. However, she was not familiar with the condition created outside and inside that building [because], the workmen who had been there several days before the accident and whose activities previous to December 6th had so attracted her attention that she remarked to one workman whom she met at the door just before she fell: 'Are you going to be horsing around here all day today?' That remark shows that she knew that work was being done. Because she did not know its exact nature or purpose and did not observe where the men were working, she had a duty to herself to be on guard every time she entered or left the premises, to see where the work was being done. Therefore, she was not familiar with the place at the time of the accident and had previous notice of possible changes in the place with which she had been familiar before the work began."

Respondents thus contend that knowledge that construction work is in progress in the room entered renders the "darkness rule" applicable to cases involving familiar premises. No authorities are cited for this proposition and we are not inclined so to extend the so-called rule. Indeed, authority would seem to be contrary to such a proposition. See Malmquist v. Leeds, 245 Minn. 130, 71 N.W.2d 863.

In the case at bar it was necessary for plaintiff to enter and traverse the room in question in order to arrive at her place of employment. What she was entitled to expect and what she should have anticipated under all of the circumstances are propositions upon which reasonable minds might well differ.

The so-called "darkness rule," then, can have no application to the facts of this case, and the question of contributory negligence should have remained a question for the jury.

Whether where "darkness" is the result of temporary blindness, application of the so-called "darkness rule" is an unwarranted extension we do not here decide. In the light of our opinion a consideration of this question becomes unnecessary.

Appellant assigns further error in the admission of certain evidence. Discussion of such assignment is not necessary.

Reversed with costs and remanded for new trial.

MERRILL, C. J.: I concur.

MCNAMEE, J. (concurring) :

I concur in the result, but the reasons for my conclusion follow.

The doctrine of assumption of risk although usually limited to controversies between master and servant may also apply to preclude recovery in negligence cases. This doctrine has been held applicable to the situation under the so-called darkness rule which provides that where a person goes forward into an unfamiliar dark place, he does so at his own risk. Wentink v. Traphagen, 138 Neb. 41, 291 N.W. 884; Bianchi v. South Park Presbyterian Church, 123 N.J. Law 325, 8 A.2d 567, 124 A.L.R. 808.

The darkness rule, however, is more often considered in connection with the doctrine of contributory negligence. See 65 C.J.S., sec. 121, p. 731. Whether a given state of facts constitutes contributory negligence as a matter of law or whether it should go to the jury depends entirely on the existing circumstances in each particular case. Here the negligence of the respondents is conceded, and it is not necessary to consider further the doctrine of assumption of risk.

The authorities seem to recognize the following broad general rules:

1. To proceed in the dark in a strange or unfamiliar place is negligence as a matter of law;

2. To proceed in the dark in a familiar place is not negligence as a matter of law;

3. To proceed in the dark in a familiar place but

which has been subjected to unknown changed conditions is not negligence as a matter of law;

4. To proceed in the dark in a familiar place which has been subjected to known changed conditions is negligence as a matter of law;

5. (As a necessary corollary resulting from 3 and 4:) To proceed in the dark in a familiar place which has been subjected to changed conditions and it is questionable under the evidence whether the changed conditions were known or should have been known or were not known is a factual question for the jury and is not negligence as a matter of law. See 65 C.J.S. Negligence, sec. 254, p. 1154 and cases in Notes 18 and 19.

From the evidence in the record on appeal reasonable men could differ whether the changed conditions were known or should have been known to appellant, and consequently it was error to take this issue from the jury.