Joan Runnakko BETZOLD,
Respondent,

v.

Mary Ellen Marburger SHERWIN, et
al., Appellants.

No. C6–86–1506.

Court of Appeals of Minnesota.

April 21, 1987.

Review Denied June 25, 1987.

A. Blake MacDonald, MacDonald, Munger & Downs, Duluth, Jack Fena, Hibbing, for respondent.

Bruce E. Coleman, Duluth, for appellants.

Heard, considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from the denial of a motion for judgment notwithstanding the verdict or for a new trial. Appellants claim the trial court erred when it (1) excised a portion of a medical record, (2) added the word "construct" to its instruction on negligence and to the special verdict form, (3) refused to give appellants' requested instruction on assumption of risk, (4) gave an instruction on duty to warn, and (5) sent only a portion of the instructions to the jury in writing. Respondent appeals from the trial court's denial of a motion for prejudgment interest under Minn.Stat. § 549.09 (1984). We reverse and remand for a new trial.

## FACTS

Respondent Joan Betzold went to the home of her friend, appellant Mary Ellen Marburger Sherwin, between 10:00 and 10:30 a.m. on August 15, 1983. Respondent had never been in the house before. She entered via an entryway in the middle of the south side of the house and then went into the living room in the northwest corner of the house.

Appellants' house has an unusual layout. From the south, a person enters immediately into a large open washroom. To the right, or east, is a large bedroom. A few steps to the left, or west, is a landing which is level with the washroom. On the north side of this landing, a person would take one step up to enter the living room. On the south side of the landing, a person would take two steps down to enter the kitchen. Directly ahead of the landing, to the west, are steps leading down to the basement. There is no door at the top of the basement stairs.

Respondent and appellant left the house together and spent the day in Grand Rapids. They returned between 10:00 and 10:30 p.m. Respondent decided to spend the night, and the two women went into the bedroom on the east side of the house. A short time later, respondent got a can of pop from her car and brought it into the bedroom. Respondent asked permission to put the pop in the refrigerator, and asked how to get to the kitchen. Appellant told respondent either to go "straight ahead" or straight ahead and to the left. Respondent walked toward the kitchen without turning on any lights. Unable to see the basement stairs just past the steps to the kitchen, she continued straight ahead and fell to the bottom of the stairs. Respondent was taken to Hibbing for treatment the following day. Since that time, she has been treated in Duluth, Grand Rapids and Minneapolis for a herniated disc and related problems.

Respondent brought a negligence action to recover for the injuries allegedly caused by the fall. The jury found appellants 85% negligent and respondent 15% negligent.

## ISSUES

1. Did the trial court abuse its discretion in excising a portion of respondent's medical record?

2. Did the trial court err in adding the word "construct" to the jury instruction on homeowner duty and to the special verdict form?

3. Did the trial court err in refusing to give the jury an instruction on assumption of risk?

4. Did the trial court err in instructing the jury on a homeowner's duty to warn an entrant of potential dangers?

5. Did the trial court err in submitting only a portion of the instructions to the jury in writing?

## ANALYSIS

1. Respondent's medical record from St. Luke's Hospital in Duluth includes a number of notations made by Dr. W.S. Pollard, a specialist who treated her. The trial court excised a portion of the medical record dated April 30, 1984, which read: "Imp. L4–5 disc Says had ruptured disc 4 years ago + intolerant of Tx. Defer such. WSP." The notation is important because it suggests that respondent had a ruptured disc [1] (the same injury which she claims was caused by this accident) in 1980, three years before the accident. The notation therefore goes to the issue of causation. Because respondent testified at trial that she had not had a ruptured disc in 1980, the notation also goes to her credibility.

The trial court excluded the notation because it concluded that the notation was an inadvertent error by Dr. Pollard, and that Dr. Pollard meant to refer to back problems respondent had in 1967. The court based this conclusion on respondent's denial that she had a ruptured disc in 1980, the testimony of Dr. Burnett, her treating physician, that respondent never told him she had a ruptured disc in 1980, a letter from Dr. Pollard to respondent's attorney four months before the notation was made which made no mention of a 1980 ruptured disc, and "the history she gave to other doctors."

■ A ruling on the admissibility of evidence will be overturned only if we find that the trial court has abused its discretion. *In re Conservatorship of Torres,* 357 N.W.2d 332, 341 (Minn.1984). The trial court found that the excised notation was not admissible under the business records exception to the hearsay rule because it reported respondent's self-serving statement relating to the "causation" of the injury. Although portions of medical records should be stricken when they contain statements as to *how the accident occurred,* these records are admissible because they pertain to *medical history. Lindstrom v. Yellow Taxi Co.,* 298 Minn. 224, 214 N.W.2d 672 (1974).

■ The more difficult question is whether the trial court properly concluded that the notation was clearly erroneous and that it was therefore more prejudicial than probative under Minn.R.Evid. 403. The only solid evidence the notation was erroneous is the testimony of respondent that she never told Dr. Pollard that she had a ruptured disc in 1980 and Dr. Burnett's testimony that respondent never mentioned a ruptured disc in 1980. Dr. Pollard's letter to respondent's counsel means little because it was written four months before the notation at issue here, which leaves open the possibility that respondent mentioned a 1980 ruptured disc to Dr. Pollard in the intervening four months. Although the trial court refers to "the history she gave to other doctors," there is no indication from the record that any medical histories taken by other doctors were ever available to the trial court. The question whether respondent had suffered a ruptured disc in 1980 was a disputed issue of fact. If necessary, Dr. Pollard could have been called as a witness to clarify the notation. Under these circumstances, the trial court erred in excising the notation before submitting the medical record to the jury.

2. JIG 330 G–S, which is taken from *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972), provides:

A possessor of land has a duty to use reasonable care to (inspect and repair his premises) or (warn an entrant who comes upon his premises) to protect the entrant from an unreasonable risk of harm caused by the condition of the premises while he is on the premises.

The trial court, over objection, added the word "construct" to the instruction. The instruction given to the jury began:

Possessors of land, including a home, have a duty to use reasonable care to

1. "Ruptured disc" is a synonym for "herniated disc" or "hernia."

construct, inspect and repair their premises or to warn an entrant who comes upon the premises to protect the entrant from an unreasonable risk of harm caused by the condition of the premises while the entrant is on the premises.

The trial court based its action on its conclusion that "[i]t was clear from the photographs, the testimony, and the view of premises that [appellants'] home was constructed in stages." There is, however, no evidence at all as to who built the home or when it was constructed. There is no evidence that the appellants constructed any additions to the home. Therefore, the instruction was improper. *Johnson v. St. Charles Municipal Liquor Store,* 392 N.W.2d 909, 911 (Minn.Ct.App.1986).

Similarly, the trial court included the word "construct" in the special verdict form. Under the same analysis, the special verdict form was also improper.

3. Appellants claim the trial court erred in refusing to give an instruction on assumption of risk. They offer no caselaw to support their claim. The language of the requested instruction, JIG 135–S, itself requires that the jury find that the plaintiff had knowledge of the risk. A mere contention that the plaintiff *should have* had knowledge of the risk does not justify the instruction. *Beckman v. V.J.M. Enterprises, Inc.,* 269 N.W.2d 37, 39 (Minn.1978). The trial court properly refused to give the instruction.

4. Appellants claim the trial court erred in instructing the jury on a homeowner's duty to warn an entrant of potential dangers. They cite *Blomberg v. Trupukka,* 210 Minn. 523, 299 N.W. 11 (1941) and *Lawrence v. Hollerich,* 394 N.W.2d 853 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Dec. 17, 1986), for the proposition that there is no duty to warn where the danger is open and obvious. Both cases, however, involved dangers which were obvious at the time of the accident. A landowner is not relieved of the duty to warn at night merely because a condition is open and obvious during the day. *Malmquist v. Leeds,* 245 Minn. 130, 139, 71 N.W.2d 863, 869 (1955).

Respondent's failure to turn on a light did not relieve the appellant of her duty to warn respondent of the danger posed by the open stairwell. In addition, a homeowner has a duty to warn of even obvious or known dangers when the homeowner can nonetheless anticipate that the dangerous condition will cause physical harm. *Peterson v. W.T. Rawleigh Co.,* 274 Minn. 495, 497, 144 N.W.2d 555, 557–58 (1966). The instruction on duty to warn was properly given.

5. The trial court sent some of the instructions to the jury in writing, but did not include the "boilerplate" instructions. This action does not comply with Minn.R.Civ.P. 51, which states that "in the discretion of the court, one complete copy may be taken to the jury room when the jury retires to deliberate." The comments to Rule 51 state: "If the court permits written instructions to go to the jury room, all instructions shall be included in writing." However, appellants have waived their right to raise this claim by failing to object before the jury retired. *LaValle v. Aqualand Pool Co., Inc.,* 257 N.W.2d 324, 327–28 (Minn.1977).

**DECISION**

The trial court erred in excising a notation concerning medical history from respondent's medical records. The trial court erred in including the word "construct" in the jury instructions and the special verdict. The trial court did not err in refusing to give an instruction on assumption of risk. The trial court did not err in giving an instruction on a homeowner's duty to warn. If the trial court elects on remand to give the jury written copies of the instructions, it must give the jury a complete written set of all instructions. Because we remand for a new trial, we need not decide respondent's claim for prejudgment interest.

Reversed and remanded.