384 So.2d 63 (1980)
Donald W. ALLEN
v.
Carol J. BLANKS.
No. 51830.
Supreme Court of Mississippi.
May 7, 1980.
*64 Gene Brown, Meridian, for appellant.
Eppes & Shannon, Walter W. Eppes, Jr., Meridian, for appellee.
Before PATTERSON, C.J., SUGG and BROOM, JJ.
PATTERSON, Chief Justice, for the Court:
Donald Allen filed a declaration in the Circuit Court of Lauderdale County alleging that Carol Blanks negligently collided with his motorcycle at the intersection of Bounds and Pine Springs Roads in Meridian, injuring him. From a verdict for the defendant Allen appeals, contending the trial court erred in granting and refusing various jury instructions relating to intoxication, standard of care, and other issues. We reverse.
On June 17, 1978, at about 7:00 p.m., Allen, with a passenger, his girl friend, drove a 1972 Honda motorcycle in an easterly direction on Bounds Road in Meridian. Rick Hunnicutt, accompanied by his wife, drove his smaller Honda motorcycle alongside Allen at approximately the same rate of speed. As they approached Pine Springs Road intersection, they faced a stop sign as well as a flashing red light. Both motorcycle drivers responded to the warnings and stopped their vehicles. Hunnicutt then crossed the intersection and several seconds later, when Allen's motorcycle was completely within the intersection, Blanks' automobile struck it broadside.
A flashing yellow caution light and warning signs faced Blanks as she approached the intersection from the north on Pine Springs Road. At the time of the collision the weather was clear, the road dry, and visibility good. In the passenger area of Blanks' car an officer investigating the accident discovered a gallon jug of wine which was at least half empty.
Allen testified that he heard neither horn nor squeal of tires before the impact. His passenger, now his wife, slapped him on the shoulder and exclaimed "watch it!" and instantaneously the car struck him, knocking his 650-pound motorcycle about 100 feet and catapulting him about 25 feet from the point of impact. Other witnesses estimated the impact propelled the motorcycle approximately 30 feet and their testimony also differed as to the speed of Blanks' automobile.
Observing the roadway after the accident, Hunnicutt detected no visible skid marks. To the contrary, a passerby, James Hollis, who arrived shortly after the accident, testified he saw 50 feet of faint skid marks behind Blanks' car, which suggested Blanks observed the hazard, attempted to stop and swerved into the left lane of traffic to avoid the motorcycle.
Billie Hunnicutt testified that Blanks wore a one-piece bathing suit, no shoes and no glasses, and smelled of alcohol immediately after the accident. Blanks testified in rebuttal that while she was driving, she wore, in addition to the bathing suit, "flip flops" on her feet, wore contact lenses to correct her nearsightedness, and had drunk wine, explaining, "I had  at 1:00 o'clock, between 1:00 and 2:00  I had two cups, it was approximately eight ounces. They were full of ice. I would say I had four *65 ounces out of each cup; and, between 4:00 and 5:00, I had one more glass." Nevertheless, the odor of alcohol was such that Rick Hunnicutt, his wife Billie, and police officer Taylor, as well as Allen himself, noticed it. Taylor required Blanks to take a breath analyzer test, the results of which were excluded from evidence as required by Mississippi Code Annotated section 63-11-43 (1972).
In sum, the evidence conflicted with respect to the position of the Allen motorcycle at the time it was struck by Blanks' automobile. The evidence of Allen's witnesses was that Allen, after stopping at the intersection, proceeded across it at approximately the same time as Hunnicutt, but stalled within Blanks' lane of travel and in this position suffered the impact of the car driven by Blanks, who was speeding, drunk, shoeless, and without lenses to correct her nearsightedness. Blanks' evidence was that Allen stalled at the stop sign and in a foolish effort to catch up with Hunnicutt sped into the intersection in an attempt to "beat the traffic." According to Allen, speed, drunkenness and inattention prevented Blanks from avoiding the accident. According to Blanks, Allen's inexcusable failure to yield the right-of-way constituted the sole cause of the accident, unavoidable notwithstanding her sobriety, braking, and driving into the opposite lane of travel to avoid the collision.
Without contradiction, Allen was severely injured in that his left leg was broken, eventually requiring amputation of most of his left foot through surgical procedures necessitating hospitalization for about three months.
By his first assignment of error, Allen attacks the refusal of the trial court to instruct the jury peremptorily on the issue of liability. In our opinion, this assignment lacks merit. Taken as a whole, the evidence, including reasonable inferences arising from it, when viewed in the light most favorable to Blanks, raises credibility issues appropriate for jury resolution upon proper instructions. See Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975).
Allen next attacks the refusal of the trial court to grant proffered instruction P-3, a standard of care instruction including the language, "the defendant had no lawful right to go forward ... under the assumption that it would be open and clear." While language of this sort appears in the cases, see Tippit v. Hunter, 205 So.2d 267 (Miss. 1967); Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962), defects in instructions do not require reversal where all the instructions taken together fairly announce the applicable law. Jackson Yellow Cab Co. v. Alexander, 246 Miss. 268, 148 So.2d 674 (1963). Blanks correctly observes that granted instruction P-2 aptly states Blank's duty of care as she approached the intersection. We have held that trial courts need not grant duplicitous instructions simply to satisfy each party's desire for emphasis. E.g., Mississippi State Highway Comm. v. Spencer, 209 So.2d 821 (Miss. 1968). Instruction P-2 details the crucial point that the yellow light facing Blanks demanded caution, and that a finding of negligence would flow from her failure to yield the right-of-way to Allen if he lawfully entered the intersection as he claimed and stalled unexpectedly. See MCA §§ 63-3-311(1) and (2); 63-3-805 (1972).
By his third assignment of error, Allen attacks the trial court's refusal to grant instruction P-4, which states in part, "The driver of a motor vehicle has a lawful duty to decrease his speed upon approaching an intersection." The statute on the duty of care of a driver approaching a caution light, Mississippi Code Annotated section 63-3-311(2) (1972), states the driver "may proceed ... only with caution." P-4 is defective, because caution is a relative concept not necessarily entailing decrease in speed: The current speed may already be a cautious speed. See Richardson v. Adams, 223 So.2d 536, 538 (Miss. 1969); Young v. Schwarz, 230 So.2d 583, 584-85 (Miss. 1970).
Allen next challenges the refusal to grant instruction P-5. In essence it states that *66 Blanks must be found negligent per se if she drove under the influence of alcohol. The instruction adds that a verdict for the plaintiff would follow from such finding of negligence if Blanks' intoxication operated as a proximate cause of the accident. Blanks argues the instruction was properly refused, because the evidence raised only a speculative inference of driving under the influence and of proximate causation. She relies upon five cases: Alston v. Forsythe, 226 Md. 121, 145, 172 A.2d 474 (1961); Parton v. Weilnau, 169 Ohio St. 145, 158 N.E.2d 719 (1959); Bohnsack v. Kirkham, 72 Wash.2d 183, 432 P.2d 554 (1967); Fain v. Hughes, 262 Or. 137, 497 P.2d 198 (1972); and Fossi v. George, 191 Or. 113, 228 P.2d 798 (1951).
While it is true that the court in Alston declined to reverse where an intoxication instruction had not been given despite evidence indicating that "the defendant smelled slightly of beer," the court based its decision on the fact that the proffered instruction "ignored the matter of any causal relation between the alleged driving while under the influence of intoxicating liquor and the happening of the accident." 172 A.2d at 477-78. Everything else in the opinion about intoxication is dicta. This can be seen in the Alston court's attempt to distinguish rather than overrule Singleton v. Roman, 195 Md. 241, 72 A.2d 705 (1950).
In Singleton the following language appears:
In determining whether or not a driver was under the influence of liquor in any degree, the jury should be left free to form their own judgment from the evidence... . At the trial below, where there was testimony that there was a very slight odor of alcohol on the driver's breath, but he did not seem to be intoxicated, it was the province of the jury to determine whether he was actually under the influence of intoxicating liquor in any degree, however slight, and if he was, whether the intoxication contributed to the accident.
(72 A.2d at 707)
In a later case, Walker v. Hall, 34 Md. App. 571, 369 A.2d 105 (1977), the Maryland Court of Special Appeals elaborated upon one factual basis for the Alston decision:
Appellant overlooks the significance of Trooper Myrick's testimony that he smelled alcohol on Hall's breath yet concluded that "I didn't feel that he had enough to be charged with it... ." A similar issue was before the Court of Appeals in Alston v. Forsythe, 226 Md. 121, 172 A.2d 474 (1961). In Alston, the court affirmed a judgment for the defendant despite the trial court's actions in not instructing the jury concerning the provisions of the predecessor section of Art. 66 1/2, § 11-902, under circumstances where the defendant had admitted to drinking two beers prior to the accident. The investigating officer in Alston, as in the instant case, noted the defendant's drinking yet failed to charge him with a violation.
(369 A.2d at 114)
In this case, in contrast, the investigating police officer who administered a breath test to Blanks did not testify as to whether any criminal proceedings had been initiated against Blanks as the result of the accident. Mississippi Code Annotated section 63-11-43 (1972) renders inadmissible in a civil case the results of any chemical test to determine the level of blood alcohol. Unlike Alston, we do not have in the record an affirmative statement by a police officer that there was no probable cause for believing the driver to have been under the influence. On the contrary, the officer in this case, finding a gallon jug of wine at least half empty in the car and smelling alcohol on Blanks' breath, administered a breath analyzer test to verify his suspicion. Under these circumstances, Alston loses persuasiveness in Blanks' argument for affirmance. Bohnsack, supra, falls within the same category for the same reasons. We note also that in Provins v. Bevis, 70 Wash.2d 131, 422 P.2d 505 (1967), the court displayed willingness to submit the issue of intoxication to the jury upon appropriate instructions.
*67 Blanks next relies upon Parton v. Weilnau, 169 Ohio St. 145, 158 N.E.2d 719 (1959). There, the Supreme Court of Ohio expressed its dissatisfaction with admission of testimony concerning blood percentage of alcohol without "definite expert testimony to explain the significance of the percentage of alcohol." 158 N.E.2d at 724. The court added, "Even assuming that decedent had been under the influence of alcohol ..., it is difficult on the facts of this case to conceive of any reasonable basis for a finding of any proximate causal relationship between that fact and plaintiff's injuries."
Paragraph 1 of the Parton syllabus states the law of the case as follows: "Where upon the evidence reasonable minds cannot conclude that an automobile driver was under the influence of alcohol at the time of the collision ... an issue as to whether such driver was negligent in driving under the influence of alcohol should be withdrawn from consideration by the jury." 158 N.E.2d at 721. In essence, this statement merely directs an inquiry to the facts of each case, stating the familiar rule that where reasonable minds cannot differ no factual question remains for the jury to decide.
Blanks next relies upon Fain, supra. In Fain the court stated that in the absence of evidence of any "perceptible effects of drinking" on the defendant's driving, the court below properly removed the issue of intoxication from consideration by the jury. Again, however, an officer's affirmative testimony that based on his observations at the scene of the accident the defendant was not under the influence of intoxicating liquor raises a distinguishing feature in the case which was not overcome by the defendant's admission that earlier in the afternoon of the accident he had had "three or four beers." 497 P.2d at 199. But Jenson v. Spencer, 269 Or. 411, 525 P.2d 153 (1974), construing Fain and Fossi, supra, the remaining case relied upon by Blanks, sharpens somewhat the meaning of "perceptible effect" in Oregon law regarding submission of the issue of intoxication to the jury. Like Fossi, Jenson involved the standard of gross negligence under the guest statute and proof of intoxication to raise an inference of gross negligence. The court found the evidence, which included testimony that the defendant smelled of alcohol, sufficient to warrant submission of the issue of intoxication to the jury.
In this case, the issue is one of simple, not gross, negligence, and the threshold of sufficiency of the evidence to submit the question to the jury should therefore be lower. Also, the Oregon court's interest in Fain with the phrasing "perceptible effect" appears to us unsound. It is a fact capable of judicial notice that consumption of even small quantities of alcohol may significantly, albeit "imperceptibly," impair reaction time. Where split seconds are critical, even a very slight impairment of reaction time may spell the difference between accident or no accident, between proximately contributing negligence or the lack of it.
In considering Blanks' argument that the instruction on intoxication was properly refused, we note that the only consequence of giving the instruction is to call the jury's attention to the relevant evidence as to whether the driver was intoxicated and further as to whether the intoxication, if any, proximately contributed to the accident. An instruction of the kind offered by Allen does not, as Blanks suggests, bind the jury to a finding of negligence. It simply indicates the legal effect of findings of intoxication and proximate cause, leaving entirely to the jury the factual question of whether such intoxication and proximate cause appears from the evidence presented. See gen. Gandy v. State, 373 So.2d 1042 (Miss. 1979).
Four occurrence witnesses, including a police officer, stated that Blanks smelled of alcohol. The significance of the presence of a partially consumed gallon jug of wine in the car cannot be discounted. See Burkett v. Johnston, 39 Tenn. App. 276, 282 S.W.2d 647 (1955); see gen. Blashfield, Automobile Law and Practice (3d Ed. 1969) § 490.86.
In Freeze v. Taylor, 257 So.2d 509, 511 (Miss. 1972), we stated, "[d]riving an *68 automobile on the highway under the influence of intoxicants ... is not only dangerous ... it is per se negligence, and if such negligence contributed to the injury of the plaintiff, the defendant is liable in damages." See also Hill v. Columbus Ice Cream & Creamery Co., 230 Miss. 634, 93 So.2d 634 (1957). We think the evidence in this case raises a factual question sufficient to warrant submission of the intoxication/negligence issue to the jury on instructions explaining the need for finding of proximate causal connection between the intoxication and the accident. We therefore are of the opinion the trial court erred in refusing instruction P-5.
By his fifth assignment of error, Allen attacks the trial court's refusal of instruction P-11. P-11 charges the jury to disregard any evidence relating to Allen's failure to procure a valid driver's license.
The record reveals that Blanks' attorney wafted into the jury box an unwarranted innuendo concerning Allen's failure to procure a driver's license. Blanks' attorney first broached the subject on cross-examination of Allen:
Q. You have had a good bit of experience driving a motorcycle?
A. Yes, sir.
Q. Drive a car?
A. Yes, sir.
Q. Got your license with you?
A. No, sir.
Q. Got one?
BY MR. BROWN: I object to that line of questioning, your Honor. It has no relevance on the negligence.
BY THE COURT: Overruled; he's on cross-examination.
BY MR. EPPES: Son, you never have had a driver's license, have you?
BY MR. BROWN: Your Honor, I'm going to ask for a mistrial. That's as inadmissible as has ever been admitted in a court of law.
BY MR. EPPES: I'll withdraw it.
On redirect examination, Allen's attorney did nothing more than explore the matter of driving experience, which Blanks' attorney had opened on cross-examination. Then Blanks' attorney interjected, "Your Honor, I think the door is now open." The court responded, "Yes, sir."
The prejudicial one-liner on recross examination follows:
Q. Have you got a license now and did you have a license when this accident happened, to be operating any kind of motor vehicle? Yes or no.
A. No, sir.
BY MR. BROWN: Your Honor, I'm going to move for a mistrial.
BY THE COURT: Overruled.
Blanks' attorney then carefully watered the seed which he had planted first on cross-examination.
BY MR. EPPES: I'd like an answer from the witness as to whether or not on the occasion of this accident or before or since you have had a license to operate an automobile or motor vehicle in the state of Mississippi?
Q. No, sir.
BY MR. EPPES: That's all.
The probative value of this testimony on the issue of negligence is exceedingly slight, its prejudicial impact and tendency to mislead immeasurably great. The clear majority, and, we think, better-reasoned position, which we now adopt, holds evidence of this kind inadmissible for the purpose of proving lack of due care. See, e.g., Hawkins v. United States, 395 A.2d 45 (D.C.App. 1978); State v. Davis, 196 N.W.2d 885, 894 (Iowa 1972); Giles v. Gardner, 287 Ala. 166, 249 So.2d 824 (1971); Mills v. Park, 67 Wash.2d 717, 409 P.2d 646 (1966); Wilson v. Hobrock, 344 Ill. App. 147, 100 N.E.2d 412 (1951); Blashfield, Automobile Law and Practice (3d Ed. 1969) § 421.1; Prosser, Torts (4th Ed. 1971) § 36, p. 193, et seq.
We reject Blanks' argument that Allen's attorney waived his previous objection by examining his client with respect to driving experience. Blanks' attorney first mentioned driving experience in connection with his examination of Allen concerning licensing. When Allen's attorney objected, the court declared, "overruled," erroneously *69 suggesting that evidence of this sort had some legal effect. From that point on, Allen's attorney attempted to mitigate the prejudicial effect. The trial judge then punished that attempt, the only route open to Allen's attorney to rehabilitate his client, by ruling that he had "opened the door" to further prejudicial questions on recross-examination.
As for Blanks' argument that the error was harmless, the sharp conflict in the testimony of the witnesses demonstrates the case is factually close on the liability issue, particularly in view of the application of comparative negligence. Under these circumstances, even slight prejudice must be assumed to have been outcome-determinative. See Bradley v. Holmes, 248 Miss. 44, 157 So.2d 801 (1963); Myrick v. Holifield, 240 Miss. 106, 126 So.2d 508 (1961).
We conclude that Allen's motion for a new trial should have been sustained inasmuch as the trial court refused the instruction, P-11, proffered to alleviate the prejudicial effect of the improper evidence relating to Allen's failure to procure a driver's license.
Our disposition of the foregoing issues renders unnecessary any discussion of Allen's remaining assignments of error.
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.