BRADNEY RAY VERNER, Appellant, v. NEVADA POWER COMPANY, a Nevada Corporation, Respondent.

No. 15520

September 25, 1985        706 P.2d 147

[Rehearing denied December 10, 1985]

*Leavitt & Leavitt,* Las Vegas, for Appellant.

*Beckley, Singleton, De Lanoy & Jemison,* and *Sherman B. Mayor* and *Franny A. Forsman,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment entered on a jury verdict in a personal injury action in favor of respondent, Nevada Power Company. The jury returned a special verdict finding appellant Bradney Ray Verner 53 percent negligent in an accident, thus barring him from any recovery. Appellant makes numerous assignments of error on appeal. Having determined that the lower court erred in matters dispositive of this appeal, we reverse and remand for a new trial.

On August 18, 1980, Bradney Ray Verner (Verner) was 29 years old and was employed as a lineman for Centel Telephone (Centel). He and his partner were lowering the Centel lines to make room for cable TV lines. The pole on which Verner suffered his injuries was owned by respondent Nevada Power Company (Nevada Power), but jointly used by both utilities, and had been installed in 1953.

The primary or main power line was supported at the top of this pole, but a vertical line connected it to the transformer[1]

---

[1] The transformer changes the 7200 volts transmitted by the primaries into 110 volt units to be transmitted by the secondaries.

located below the secondary power lines. (Modern practice, made possible by lighter transformers, is to locate transformers above the secondaries near the top of a pole.) The vertical line, also carrying 7200 volts, formed a drip loop before attaching to the transformer to allow water to drip off so it would not flow into the transformer. As a result of this configuration of the transformer and the vertical line from the primary, the drip loop was the lowest (in height) power bearing line on the pole. Normally, the primaries are the furthermost off the ground and the secondaries are the power bearing lines closest to the ground. The 7200 volt drip loop was also partially insulated, as secondaries are while primaries usually are not.[2] Thus, the drip loop was similar to a secondary in its location on the pole and its appearance.

After making a visual inspection of the pole, Verner began climbing it. He climbed up to the telephone lines, then continued climbing up to the secondaries which carry 110 volts to individual houses. Verner then attached a handmade extension cord or "pigtail" to the secondary. Pigtails supply power to linemen to run their power tools while working on poles. Pigtails were not officially authorized by either Centel or Nevada Power; the evidence at trial was conflicting whether they are unofficially tolerated. Linemen were instructed to use approved extension cords running from a generator in the truck to the pole. When, as in this case, the pole is in a backyard easement and the extension cord on the truck is too short, it is more convenient to use a pigtail than to get a longer extension or to use hand tools.

Verner's accident happened as he was descending the pole back to the level of the phone lines. At trial, Verner testified that he remembered that he suffered a gaff "cutout"[3] with his left leg in mid-stride and his arms around the pole. The gaff on Verner's right foot slipped, and he fell several feet as he fought to re-establish a position on the pole. In his struggle to regain his balance, his left foot swung out and touched a grounded communication line. At the same time, his left shoulder touched the drip loop of the primary power line carrying 7200 volts. Because Verner was touching both lines simultaneously the 7200 volts traveled through his body, shocking him severely. Verner was seriously burned on his left shoulder, arm and shoulder blade and the bottom of his left foot was burned off. The shock threw Verner off the pole, and he fell 17 feet to the ground severing his spine. As a result of his injuries, Verner is now a paraplegic,

---

[2] If not grounded, a lineman could touch a secondary wearing only leather gloves while rubber gloves are required to work with primaries.

[3] The gaff is the steel climbing spike upon the climber's boot instep. A gaff "cutout" is when the gaff slips out of the pole because of a crack or rotten spot in the pole.

554

permanently paralyzed from the chest down, and confined to a wheelchair.

At trial, Nevada Power made a motion for separate trials on the issues of liability and damages on the basis that evidence of damages would prejudice the findings concerning liability. NRCP 42(b).[4] The district court ordered separate trials as an economy of time. On appeal, Verner argues that the district court abused its discretion in bifurcating this trial because the issues of liability and damages were inextricably intertwined. We agree.

Verner asserts that medical testimony regarding his burn patterns was necessary to show how his accident occurred. He also claims that medical testimony concerning his temporary loss of memory following the accident and later recovery of it was necessary to preserve his credibility. Due to the bifurcation of trials, the trial court allowed only limited medical testimony. These limitations resulted in a cursory, almost cryptic, presentation of Verner's injuries. In its final argument, Nevada Power used this restricted review of Verner's injuries to challenge the limited medical testimony. Nevada Power argued that Verner did not recover from his amnesia, but had, instead, fabricated his testimony regarding how the accident took place.

To justify a separate trial on the issue of liability, the issue of liability must be separate and distinct from the issue of damages. State ex rel. Perry v. Sawyer, 500 P.2d 1052 (Or. 1972). Where the nature of the injuries has an important bearing on the issue of liability, a separate trial should not be ordered. Williams v. Adams, 362 N.Y.S.2d 68 (N.Y. 1974). Further, the movant must demonstrate that a bifurcated trial is clearly necessary to lessen costs and expedite the litigation. Perry, supra. The trial court bifurcated the trial as an "economy of time," although it was asserted that the damage portion would only have taken approximately two additional days of trial time. More significantly, the issues of liability and damages were inextricably interrelated. The bifurcation of trial prejudiced Verner's ability to present his case on the issue of liability. The district court abused its discretion in ordering separate trials. Perry, supra; Williams, supra. See also, Brown v. General Motors Corporation, 407 P.2d 461 (Wash. 1965). We reverse and remand for a nonbifurcated trial.

On appeal, Verner also asserts that the district court erred in its

[4]NRCP 42(b) provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury.

refusal to give Proposed Instruction I.[5] This instruction is essentially the instruction a district court is required to give pursuant to NRS 41.141(2)(a), if requested.[6] The district court recognized that NRS 41.141(2)(a) was mandatory but considered the instruction unnecessary in a bifurcated trial. Nevada Power argues that this instruction is required where there is a general verdict, but cannot be given where, as in the instant case, a special verdict is used. We disagree.

The language in NRS 41.141(2) is plain and unambiguous. A reading of NRS 41.141 makes clear that no limitation is imposed upon this requirement either because of a bifurcated trial or a

---

[5]Proposed Instruction I reads as follows:

> The Plaintiff may not recover damages if his contributory negligence has contributed more to his injury than the negligence of the Defendant. However, if the Plaintiff is negligent, the Plaintiff may still recover a reduced sum so long as his contributory negligence was not greater than the negligence of the Defendant.
> You shall return a special verdict indicating the percentage of negligence attributable to each party.
> The percentage of negligence attributable to the Plaintiff shall reduce the amount of such recovery by the proportionate amount of such negligence and the reduction will be made by the Court.

[6]NRS 41.141 provides:

> 1. In any action to recover damages for death or injury to persons or for injury to property in which contributory negligence may be asserted as a defense, the contributory negligence of the plaintiff or his decedent does not bar a recovery if that negligence was not greater than the negligence or gross negligence of the person or persons against whom recovery is sought, but any damages allowed must be diminished in proportion to the amount of negligence attributable to the person seeking recovery or his decedent.
> 2. In those cases, the judge may and when requested by any party shall instruct the jury that:
> (a) The plaintiff may not recover if his contributory negligence or that of his decedent has contributed more to the injury than the negligence of the defendant or the combined negligence of multiple defendants.
> (b) If the jury determines the plaintiff is entitled to recover, it shall return:
> > (1) By general verdict the total amount of damages the plaintiff would be entitled to recover without regard to his contributory negligence.
> > (2) A special verdict indicating the percentage of negligence attributable to each party.
> > (3) By general verdict the net sum determined to be recoverable by the plaintiff.
> 3. Where recovery is allowed against more than one defendant in such an action, the defendants are jointly and severally liable to the plaintiff, except that a defendant whose negligence is less than that of the plaintiff or his decedent is not jointly liable and is severally liable to the plaintiff only for that portion of the judgment which represents the percentage of negligence attributable to him.

special verdict. The legislative directive is clear: the district court must, upon request, give such an instruction to the jury. City of Las Vegas v. Macchiaverna, 99 Nev. 256, 661 P.2d 879 (1983); Peair v. Home Ass'n of Enola Legion No. 751, 430 A.2d 665 (Pa. 1977). The district court's refusal to do so violated NRS 41.141(2)(a) and constitutes error. We decline to hold this error harmless, since any determination as to what the jury would have decided had it been properly instructed would be pure speculation. On remand, the district court is instructed to give to the jury, upon request, an instruction based upon NRS 41.141(2)(a).

Verner further contends that the district court erred when it admitted into evidence a copy of NRS 704.800 which makes it unlawful to tap into a power line with the intent to steal power.[7] The district court correctly ruled that the statute did not create a standard of care relevant to the case at bar and refused to instruct the jury that a violation of NRS 704.800 was negligence *per se*. *See* Sagebrush Ltd. v. Carson City, 99 Nev. 204, 660 P.2d 1013 (1983). But the district court did allow a copy of the statute to be admitted into evidence as relevant to the issue of foreseeability. This was error. Any probative value was outweighed by its prejudicial effect. *See,* Allen v. Blanks, 384 So.2d 63 (Miss. 1980). On remand, the court is instructed to exclude the admission of NRS 704.800.

Accordingly, we conclude that the district court abused its discretion in ordering separate trials on the issues of liability and damages. We reverse and remand for a new, nonbifurcated trial consistent with this opinion.

SPRINGER, C. J., GUNDERSON, STEFFEN, and YOUNG, JJ., and GRIFFIN, D. J.,[8] concur.

---

[7]NRS 704.800 provides, in pertinent part

> 1. Every person who willfully, and with intent to injure or defraud:
> (a) Opens, breaks into, taps or connects with any pipe, flume, ditch, conduit, reservoir, wire, meter or other apparatus belonging to or used by any water, gas, irrigation, electric or power company or corporation, or belonging to or used by any other person, persons or association, or by the state, or by any county, city, district or municipality, and takes and removes therefrom or allows to flow or be taken or be removed therefrom any water, gas, electricity or power belonging to another . . . is guilty of a public offense, as prescribed in NRS 193.155, proportionate to the value of the property removed. . . .

[8]The Honorable Michael R. Griffin, Judge of the First Judicial District, was designated by the Governor to sit in place of JUSTICE JOHN C. MOW-BRAY, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.