McMILLIN, C.J.,
DISSENTING:
¶ 47. I respectfully dissent. The question of whether “fault” within the meaning of Section 85-5-7 can be apportioned to an
*1288 entity not a party to the litigation has been answered in the affirmative by the case of Estate of Hunter v. General Motors, 729 So.2d 1264 (Miss.1999). The majority of this Court errs when it relies upon a proposed definition of the word “party” contained in the dissent in Estate of Hunter to suggest that Bracken’s unavailability as a defendant in the tort action precluded the jury from calculating Bracken’s percentage of fault in Ladner’s death. We, as an intermediate appellate court, are obligated to follow the precedents contained in decisions of the Mississippi Supreme Court.
¶ 48. In Estate of Hunter, the supreme court considered whether the use of the term “party” in Section 85-5-7 meant that an alleged wrong-doer had to be a party to the litigation in order to have fault assigned to it. The court concluded that the Legislature intended the term only as a single-word means of identifying any of the multiple entities capable of being adjudicated at fault, whether an individual or some recognized legal entity such as a corporation. Id. at 1276 (¶ 44). Justice McRae, writing in dissent, urged a contrary interpretation of the word “party” as referring to an entity lawfully before the court and subject to the court’s jurisdiction. Id. at 1281 (¶ 66). In that situation, no matter how compelling the members of this Court might find Justice McRae’s argument, we simply are not at liberty to adopt it in this situation. Rather, we must concede the issue to the majority’s view contained in the opinion of the court.
¶ 49. Having determined that Estate of Hunter admits of the 'possibility that Bracken could have some fault apportioned to it even though it was not a party to the litigation, we ought then to turn to the related question of whether the decision in that case requires the jury to consider the potential degree of negligence of an employer enjoying immunity under workers compensation law. In my view, the reasoning in Estate of Hunter does not necessarily compel the same result in this case. To a large extent, Estate of Hunter was decided based upon policy considerations of fundamental fairness rather than principles of logical interpretation of statutory language. That policy consideration was the inherent unfairness seen to arise from refusing to permit fault to be allocated to a settling defendant. In the view of the supreme court, this gave rise to the possibility that the plaintiff would purposely agree to a nominal settlement against an indigent defendant, even though that defendant had substantial culpability in causing the injury, in order to preserve the potential for a larger recovery from a less culpable defendant with deeper pockets. Id. at 1273 (¶ 32).
¶ 50. The same considerations of policy do not arise in the context of this case. When the absent defendant is the injured party’s employer, that employer is exempt from suit by statute and the inclusion or exclusion of the employer is not a matter subject to manipulation by the injured employee.
¶ 51. A different policy consideration arises in the situation now before us. The question becomes whether the injured plaintiff must see his potential recovery diminished by an assignment of fault to his immune employer or whether a third party defendant may be made to respond in damages in an amount that exceeds that defendant’s proportionate share of fault in causing the injury. In my view, the more equitable result is to permit allocation of fault to the exempt employer. While this diminishes the injured party’s ultimate recovery in the tort action, the injured party has already obtained or may, post verdict, seek recovery under the compensation law from his employer. This right of recovery under workers’ compensation law is specif *1289 ically intended to replace the previously-existing common law right of recovery against the employer in tort. Thus, if the injured party is entitled to pursue both compensation benefits and recovery in tort from a negligent third party whose liability is undiminished by the percentage of fault attributable to the injured party’s employer, the injured party is, to an extent, compensated twice for the same injury. I would find it proper to require the allocation of fault to an immune employer to avoid such double recovery.
¶ 52. Additionally, I respectfully disagree that evidence of the presence of marijuana in Ladner’s bloodstream, together with evidence of marijuana cigarettes in his pocket, was inadmissible. There was a legitimate jury issue as to what percentage of fault for the accident could be attributed to Ladner under Mississippi’s comparative negligence law. Miss.Code Ann. § 85-5-7 (1972). It would be my firm view that evidence tending to show that Ladner may have been under the influence of a consciousness-altering drug to some degree was, at least potentially, admissible for such consideration as the jury determined was proper. Whether that evidence would need to be accompanied by expert testimony to assess the levels of drug ingestion discovered and the typical degree of motor or mental skill impairment that accompanies such a dosage level is another matter and one that could be resolved on remand. However, the threshold exclusion of the evidence based on considerations involving the manner in which the evidence was gathered was, in my view, patently wrong. Evidence in a civil trial is admitted or excluded principally on the issue of its probative value and not on the means by which it was gathered (excluding, of course, such self-evident exceptions as the various privileges set out in Mississippi Rule of Evidence 501 through 505). The trial court in this instance concluded that Ladner had not consented in advance to having his blood drawn and tested for drugs. Even assuming the truth of that proposition, there is nothing in the rules of evidence that would suggest the propriety of excluding the evidence on that basis.
¶ 58. The majority errs when it suggests that this case squarely presents the question unanswered in Hughes v. Tupelo Oil Co. as to whether evidence obtained through the wrongful acts of a party may be properly excluded when that party seeks its admission. Hughes v. Tupelo Oil Co., 510 So.2d 502, 505 (Miss.1987). As a result, the majority’s subsequent reasoning to exclude evidence of Ladner’s possible impairment by answering the “unanswered question” of Hughes in favor of exclusion is faulty because it begins with an erroneous premise. There is no evidence that any defendant committed a wrongful act in obtaining Ladner’s blood sample. The blood was drawn by a hospital operating under the mistaken assumption that Lad-ner was an employee of Roy Anderson Corporation, and there simply is no indication that any party in this case did anything wilfully or even negligently to create this false assumption on the hospital’s part.
¶ 54. As an appellate court, we traffic in concepts defined as best we can with the available words of our language. On occasion, words may fairly be said to be an imperfect means of communication. But to say that a mistake by an entity not a party to this litigation may be equated to a wrongful act by a party to the case, and then use that proposition as the basis to exclude relevant evidence is, in my view, an egregious mishandling of the essential tools of our trade.
¶ 55. There is no hint that Anderson Corporation and Accu-Fab were engaged *1290 in an underhanded scheme to surreptitiously test an unconscious and dying Lad-ner for drugs. Evidence that he might have been impaired through the use of illegal drugs was certainly relevant. If it is to be excluded on retrial, it ought to be on some other basis than that advanced by the majority in its opinion.
¶ 56. Ladner also points out that the trial court based its ruling in part on the proposition that the evidence of Ladner’s drug use was so prejudicial that it failed to pass the filtering screen of Mississippi Rule of Evidence 403. To the extent that the trial court based its ruling on that idea, I would reject the notion out of hand. Certainly, evidence of impaired physical and mental capabilities brought on by self-administered illegal drugs may be prejudicial, but, when the issue is whether Lad-ner, by his actions, contributed to his own death, that evidence so fundamentally goes to the heart of the case that its probative value necessarily exceeds any attendant prejudice to the plaintiff. To hold otherwise would be to suggest that, in a tort suit involving an automobile accident, evidence that one driver was substantially intoxicated could be kept from the jury because of the inflammatory nature of such evidence in today’s society.
¶ 57. I conclude that we err when we preclude any possibility that the jury could hear evidence of Ladner’s impairment based on drug use and would remand with instructions that the evidence might be admissible assuming the proper predicate could be laid to demonstrate that the drug concentration was sufficient to impair Lad-ner’s mental and motor skills to even the slightest degree. See Allen v. Blanks, 384 So.2d 63, 67 (Miss.1980) (holding that “[i]t is a fact capable of judicial notice that consumption of even small quantities of alcohol may significantly, albeit “imperceptibly,” impair reaction time.”). Whether impairment from marijuana use is a matter “capable of judicial notice” is a matter better left to be thrashed out at the trial level on remand, but, short of that, it is certainly a matter capable of scientific proof.
SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.