138 Nev., Advance Opinion 27

## IN THE SUPREME COURT OF THE STATE OF NEVADA

GAVIN COX; AND MIHN-HAHN COX, HUSBAND AND WIFE,
Appellants,
vs.
DAVID COPPERFIELD, A/K/A DAVID S. KOTKIN; MGM GRAND HOTEL, LLC; BACKSTAGE EMPLOYMENT AND REFERRAL, INC.; DAVID COPPERFIELD'S DISAPPEARING, INC.; AND TEAM CONSTRUCTION MANAGEMENT, INC.,
Respondents.

No. 76422



FILED

APR 14 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment entered on a jury verdict and from a post-judgment order denying a motion for a new trial and for partial judgment as a matter of law in a personal injury action. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Affirmed.*

Harris & Harris, Injury Lawyers, and Heather E. Harris and Brian K. Harris, Las Vegas; Morelli Law Firm, PLLC, and Benedict P. Morelli, Perry S. Fallick, and Sara A. Mahoney, New York, New York,
for Appellants.

Selman Breitman, LLP, and Elaine K. Fresch and Gil Glancz, Las Vegas, for Respondents David Copperfield and David Copperfield's Disappearing, Inc.

Selman Breitman, LLP, and Jerry C. Popovich and Gil Glancz, Las Vegas, for Respondent MGM Grand Hotel, LLC.

22-11786

Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, and Howard J. Russell and D. Lee Roberts, Jr., Las Vegas,
for Respondent Backstage Employment and Referral, Inc.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, Abraham G. Smith, and Chelsee C. Jensen, Las Vegas,
for Respondent Team Construction Management, Inc.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, PICKERING, J.:

This is an appeal from a judgment on a defense verdict in a personal injury case. Appellants complain that the district court's evidentiary and instructional errors prejudiced their case, requiring reversal and remand for a new trial. Chief among the errors claimed is the district court's decision to admit six surveillance videos of appellant Gavin Cox walking easily and without assistance outside of court. The videos contradicted Cox's in-court presentation, where he used his attorney's or the marshal's arm to walk to and from the witness stand and testified that he uses assistance to walk even when not in court.

The videos qualified as impeachment-by-contradiction evidence, and the district court did not abuse its discretion in admitting

---

[1]The Honorable Abbi Silver, Justice, voluntarily recused herself from participation in the decision of this matter. The Honorable Mark Gibbons, Senior Justice, was appointed to sit in her place. The case was initially argued before a three-justice panel, then transferred and reargued before the en banc court.

them. The other claimed errors—that the district court did not adequately admonish defense counsel for improper statements during closing argument; that it misapprehended the record when it allowed the jury to consider comparative negligence; that it should have granted a new trial because the jury could not have followed the court's instructions and still returned the verdict it did; and that it should have told the jury why it canceled a jury view—also fall short. Most involve matters entrusted to the district court's sound discretion; some, the Coxes invited or failed to preserve; and none supports that the district court abused its discretion in denying a new trial. We therefore affirm.

I.

A.

Cox attended respondent David Copperfield's magic show at the MGM Grand Hotel in Las Vegas. Cox volunteered, and Copperfield chose Cox, as one of 13 audience participants in the show's "Lucky #13" illusion. The illusion begins with the audience participants sitting in two rows of chairs in an on-stage prop. A curtain is draped around the prop, the prop is illuminated, and the participants (apparently) disappear. While this is going on, employees of respondent Backstage Employment and Referral, Inc. (Backstage), guide the participants through a "runaround" route: out of the prop, down several stairs, through a hallway and, eventually, outdoors. The participants proceed along a stretch of the MGM's exterior, then reenter and reappear at the back of the showroom, as if by magic.

Cox fell during the outdoor portion of the runaround. The parties dispute where Cox fell and why. The Coxes allege, and Cox testified, that the outdoor portion of the runaround was intermittently dark, then light, and that he slipped on construction dust and fell while running as fast

as he could up an unsafely sloped ramp. Respondents maintain, and presented evidence to support, that Backstage employees guided participants through the route with lights, that they led the group along at a "brisk walk" or "light jog," and that Cox fell on level concrete, 15 or more feet away from the ramp. Respondents also presented experts, who examined the available evidence and opined that Cox tripped—not slipped—when he failed to pick up his foot and caught his toe on the ground.

B.

Cox and his wife, Minh-Hahn Cox, sued Copperfield—both individually and through his corporation, David Copperfield's Disappearing, Inc. (collectively, Copperfield)—MGM Grand Hotel, LLC, Backstage, and Team Construction Management, Inc. (Team) for negligence; respondeat superior; negligent hiring, training, and supervision; loss of consortium; and punitive damages, seeking over $1 million in damages for the traumatic brain, spine, and shoulder injuries that Cox allegedly suffered from the fall.

On respondents' motion, the district court bifurcated the trial into two phases: liability and damages. The Coxes opposed bifurcation, arguing that it would unfairly prevent them from explaining to the jury how Cox's injuries have affected him and the way he presents himself.[2] To address the Coxes' concerns, the district court crafted a unique bifurcation order. While the order generally precluded medical or other evidence relating to damages during the first phase of the trial, it permitted the Coxes to present evidence "concerning the nature of the injuries claimed," specifically, "what Mr. Cox alleges his injuries generally are and to establish

---

[2]We do not consider the propriety of the bifurcation order because the Coxes do not raise it as an issue on appeal.

that Mr. Cox may have less than a clear recollection of the events on the night of the fall."

Even bifurcated, the first phase of the trial took seven weeks. Before Cox testified, the judge gave the jury a preliminary instruction about Cox's alleged brain injury:

> Ladies and gentlemen, Mr. Cox alleges that, as a result of this accident, one of the injuries he sustained was a traumatic brain injury which may affect the way he testifies during this trial. You may take this allegation into consideration when you are evaluating his testimony.

On direct examination, Cox testified about his injuries:

> I hit the ground. And . . . I felt a pain shoot through me like I never, ever felt before. It was like a lightning bolt going through the whole of my shoulder and left-hand side.

> I'm in agony . . . . I am in so much pain . . . . I'm hurting and I'm hurt.

The district court overruled respondents' objection to this testimony, deeming it permissible under the flexible parameters of the bifurcation order. Cox continued:

> I was sat down with my shoulder hanging in the center of my chest. . . . [Copperfield] said, "Are you hurt?" And I said yes.

Cox did not just verbalize his injuries to the jury. He also visually presented himself to the jury as a person who needs assistance to walk. Over the two days his testimony spanned, Cox used his attorney's or the marshal's arm as support to walk to and from the witness stand. Up to that point in the trial, he had also used help to come and go from the courtroom.

On cross-examination, Backstage's attorney asked Cox if he used assistance to walk when not in the jury's presence. Cox answered that

he did. Backstage later moved to admit six 30-second video clips of Cox walking normally and without physical assistance outside of court. These videos show Cox walking his dog on a leash, with his wife, and with his family on the way to trial, all unassisted. Over the Coxes' objection that conduct is not testimony and cannot be impeached, the court admitted the videos, stating that "I consider[ ] that whatever has happened in open court is fair game. And, accordingly, I'll permit the video." Respondents played the videos for the jury alongside courtroom footage of Cox walking with assistance to and from the witness stand.

Closing arguments focused on the conflicts in the evidence—including between Cox's trial and deposition testimony—as to the circumstances of his fall. Respondents urged the jury to consider the difference between the way Cox walked in court and in the videos in assessing Cox's credibility. MGM's counsel, Jerry Popovich, went further and argued that Cox has "been manipulating this jury from day one with every move he made. You shouldn't believe a word that comes out of his mouth . . . . He just wants a payoff." After the lunch recess, the Coxes objected to Popovich's comments but added "we're not asking for a mistrial. We're asking for an admonition." The district judge sustained the objection and, when the jury returned from lunch, admonished them to disregard Popovich's remarks.

The Coxes moved for judgment as a matter of law on respondents' comparative negligence defense. The district court denied their motion and instructed the jury on both negligence and comparative negligence. After deliberation, the jury returned a special verdict finding that Backstage and Team Construction were not negligent; that MGM and Copperfield were negligent but that their negligence was not the proximate

cause of Cox's fall; and that Cox was comparatively negligent and 100 percent the cause of his fall. Renewing their earlier motion, the Coxes moved for judgment as a matter of law on respondents' comparative negligence defense. They also moved for a new trial under NRCP 59(a). The district court denied both motions, and the Coxes timely appealed.

## II.

On appeal, the Coxes contend that the district court abused its discretion in denying their motion for a new trial under NRCP 59(a)(1). *See Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 74, 319 P.3d 606, 611 (2014) ("This court reviews a district court's decision to grant or deny a motion for a new trial for an abuse of discretion."). They assert that the district court erred, prejudicing their right to a fair trial, when it (1) admitted the sub rosa videos, (2) did not adequately admonish defense counsel for improper argument, (3) allowed the jury to consider comparative negligence, (4) did not find that the jury manifestly disregarded the instructions in reaching its verdict, and (5) did not tell the jury why it canceled the jury view. To be entitled to a new trial, the movant must establish *grounds*, *see* NRCP 59(a)(1) (listing as grounds for granting a new trial: "(A) . . . abuse of discretion by which either party was prevented from having a fair trial; (B) misconduct of the . . . prevailing party; . . . (E) manifest disregard by the jury of the instructions of the court; . . . [and] (G) error in law occurring at the trial and objected to by the party making the motion") and *prejudice* "materially affecting the substantial rights of the moving party." *Id.*; *see also Pizarro-Ortega v. Cervantes-Lopez*, 133 Nev. 261, 263-64, 396 P.3d 783, 786 (2017) ("[E]ven if one of NRCP 59(a)'s new-trial grounds has been established, the established ground must have 'materially affected the

substantial rights of the aggrieved party' to warrant a new trial.") (quoting NRCP 59(a) (2019)).

## A.

A district court's "decision to admit or exclude evidence [is reviewed] for abuse of discretion" and will not be disturbed "absent a showing of palpable abuse." *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008). Over the Coxes' objection, the district court admitted six 30-second videos that showed Cox walking normally and without assistance outside of court. The district court admitted the videos to impeach Cox's in-court presentation of disability. In court, Cox walked with difficulty, using his lawyer's or the court marshal's arm for support, and testified that he also used assistance to walk when not in court.

The district court did not abuse its discretion in admitting the videos as impeachment-by-contradiction evidence. "Impeachment by contradiction occurs when a party offers evidence to prove that a fact to which a witness testified is not true." 27 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6096, at 655 (2d ed. 2007). Long recognized at common law, *see Jezdik v. State*, 121 Nev. 129, 136, 110 P.3d 1058, 1063 (2005), impeachment by contradiction is implicitly authorized by NRS 50.075 (providing that "[t]he credibility of a witness may be attacked by any party") and its federal cognate, Federal Rule of Evidence (FRE) 607. *United States v. Greenridge*, 495 F.3d 85, 99 (3d Cir. 2007); *see also Jezdik*, 121 Nev. at 138-39, 110 P.3d at 1064. Contradiction evidence undermines credibility in two ways: "First, it permits the inference that the witness either lied or at least was mistaken with respect to the specific facts contradicted." 27 Wright & Gold, *supra*, at 656. Second, "since contradiction tends to show that the witness has erred or lied with respect

to some facts, the jury could infer that the witness is generally an unreliable source of information and erred or lied with respect to other facts." *Id.* at 657.

The Coxes do not and did not in district court dispute the videos' authenticity but do make four distinct arguments why the district court should not have admitted them. First, they argue that the videos were not admissible to impeach Cox's conduct because only sworn verbal testimony is impeachable. Second, they argue that admitting the videos violated NRS 50.085(3), which prohibits the introduction of extrinsic evidence to prove a witness's bad character for truthfulness. Third, they argue that the videos were irrelevant to the liability phase of a bifurcated trial and therefore inadmissible because collateral to the matter. Finally, they maintain that the district court abused its discretion in denying their request to call a medical expert on rebuttal to explain why Cox walked differently in and out of court.

1.

The Coxes' first argument—that only sworn verbal testimony is impeachable—proceeds from a flawed premise. Conduct, equally with words, can constitute evidence. *See* NRS 51.045 (defining "statement" for hearsay purposes as including both "[a]n oral or written assertion" or "[n]onverbal conduct of a person, if it is intended as an assertion"); Hon. Robert E. Jones et al., *Rutter Group Practice Guide: Federal Civil Trials and Evidence* ¶ 8:364, at 8C-34 (Supp. 2021) (stating that "[a] party's appearance, demeanor or nontestimonial behavior in court may constitute evidence on matters at issue in the case") (citing *Pennsylvania v. Muniz*, 496 U.S. 583, 591 (1990)). So, "[f]or purposes of contradiction impeachment, a witness may be taken to testify to a fact where the witness engages in

assertive conduct on the witness stand." 27 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6096, at n.1 (Supp. 2021) (discussing as an example *United States v. Hinkson*, 526 F.3d 1262, 1282-83 (9th Cir. 2008), *on reh'g en banc*, 585 F.3d 1247 (9th Cir. 2009), where a "witness who wore Purple Heart lapel pin while on [the] witness stand was engaging in conduct assertive of [the] fact he had been wounded while in military service"). Going further, while it is true that most impeachment-by-contradiction cases "involve attempts to contradict actual testimony given by parties, . . . this form of impeachment can target . . . forms of evidence other than testimony." 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:86 (4th ed. 2021); *cf. Henriod v. Henriod*, 89 P.2d 222, 225 (Wash. 1938) (in assessing credibility, the finder of fact can consider "not only . . . the facts testified to in the court room, but also . . . the attitude and conduct of the witness during the progress of the trial"); *United States v. Shonubi*, 895 F. Supp. 460, 480 (E.D.N.Y. 1995) (Weinstein, J.) (noting that a finder of fact "may consider the demeanor and actions of a person even when that person is not testifying" and quoting Jerome Frank, *Law and the Modern Mind* 109 (1931), "The tongue of the witness, it has been said, is not the only organ for conveying testimony.") (internal quotation marks omitted), *rev'd on other grounds by* 103 F.3d 1085 (2d Cir. 1997).

Cox testified on direct examination about his injuries generally, and on cross-examination to using assistance walking even when not in court. In addition, he walked to and from the witness stand on the arm of his attorney or the marshal. Once sworn as a witness, he remained under oath until his testimony concluded the next day, so at least some of the demonstrative conduct occurred while he was under oath. From this, the district court properly concluded that Cox's courtroom conduct conveyed to

the jury that the injuries he sustained in his fall left him unable to walk unassisted—and that the videos directly contradicted that evidence.

2.

The Coxes' second argument—that NRS 50.085(3) expressly precludes admission of all extrinsic evidence when used to attack a witness's credibility—also fails. Nevada's evidence code is modeled after a draft of the Federal Rules of Evidence, *see Mitchell v. Eighth Judicial Dist. Court*, 131 Nev. 163, 170, 359 P.3d 1096, 1101 (2015), and NRS 50.085(3) is substantially similar to the pre-2003 version of FRE 608(b). *See Lobato v. State*, 120 Nev. 512, 519 n.11, 96 P.3d 765, 770 n.11 (2004). The gloss accompanying this federal rule is therefore persuasive when interpreting NRS 50.085(3). *See Rodriguez v. State*, 128 Nev. 155, 160 n.4, 273 P.3d 845, 848 n.4 (2012).

NRS 50.085(3) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime, may not be proved by extrinsic evidence."[3] This language parallels that in the pre-2003 version of FRE 608(b). Courts addressing the pre-2003 version of Rule 608(b) found that it created "difficulty in distinguishing between Rule 608 impeachment and impeachment by contradiction." 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 608.12[6][a], at 608-41 (2d ed. 1999). They concluded that, while Rule 608(b) prohibits the use of extrinsic evidence of conduct to

---

[3]NRS 51.085(3) continues, stating: "They may, however, if relevant to truthfulness, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to an opinion of his or her character for truthfulness or untruthfulness, subject to the general limitations upon relevant evidence and the limitations upon interrogation and subject to the provisions of NRS 50.090."

impeach a witness's credibility in terms of his general character for truthfulness—or untruthfulness—"the concept of impeachment by contradiction permits courts to admit extrinsic evidence that *specific testimony* is false, because contradicted by other evidence." *United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999) (emphasis added). They based this approach "on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment" under Rule 608(b)'s prohibition, *id.* at 1132-33 (quoting 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6119, at 116-17 (1993)), as well as on Rule 607's (NRS 51.075's) general provision that "[a]ny party . . . may attack [a] witness's credibility." *See United States v. Benedetto*, 571 F.2d 1246, 1250 n.7 (2d Cir. 1978).

The 2003 amendments to Federal Rule of Evidence 608(b) confirm the correctness of cases like *Castillo*. The amendments substituted the phrase "character for truthfulness" for "credibility." The purpose was to "clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness'[s] character for truthfulness." Fed. R. Evid. 608 advisory committee's note to the 2003 amendment. As the advisory committee noted, "On occasion, the Rule's use of the overbroad term 'credibility' has been read to bar extrinsic evidence for bias, competency, and contradiction impeachment since they, too, deal with credibility." *Id.* (internal quotation marks omitted). "By limiting the application of [Rule 608(b)] to proof of a witness's *character for truthfulness*, the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (*such as contradiction*, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403," the general rules on relevance. *Id.*

SUPREME COURT
OF
NEVADA

(O) 1947A

12

(internal quotation marks omitted; emphases added); *see also* discussion *infra* Section II.A.3. The 2003 amendment substituting "character for truthfulness" for "credibility" conforms Rule 608(b) "to its original intent, which was to impose an absolute bar on extrinsic evidence only if the sole purpose for offering the evidence was to prove the witness's character for veracity." *Id.*; *see also United States v. Tarantino*, 846 F.2d 1384, 1409 (D.C. Cir. 1988) (holding that admissibility of extrinsic evidence offered to contradict a witness is governed by Rules 402 and 403, as distinguished from evidence to impeach a witness's character for truthfulness, which is governed by Rule 608(b)); *State v. Hayes*, 462 P.3d 1110, 1119-20 (Idaho 2020) (holding that Idaho's version of FRE 608(b), which, similar to NRS 50.085(3), tracked the pre-2003 version of Rule 608(b), only prohibits extrinsic evidence of the defendant's character for untruthfulness, not extrinsic evidence used to impeach by specific contradiction).

Cox walking unassisted outside of court is a neutral act. It does not inherently connote good or bad character for truthfulness. Its evidentiary value arises because it contradicts Cox's in-court assertion that he uses assistance to walk. NRS 50.085(3)'s prohibition against using extrinsic evidence to prove general character for truthfulness or untruthfulness thus does not apply.[4] *See* 28 Charles A. Wright & Victor J.

---

[4]Distinct from this case is *Jezdik v. State*, in which this court established an exception to NRS 50.085(3)'s prohibition against use of extrinsic evidence to prove general character for truthfulness when the defendant places a bad act at issue. 121 Nev. at 138-39, 110 P.3d at 1064. There, the court permitted the State to admit extrinsic evidence that the defendant was being investigated related to another matter and that he had opened a fraudulent credit card account to rebut his statement on direct examination that he had never been accused of anything other than the instant charges. *Id.* at 134, 136-37, 110 P.3d at 1062, 1063. The court

Gold, *Federal Practice & Procedure* § 6118, at 113-22 (2d ed. 2012) (giving examples of conduct bearing on bad character for truthfulness, including perjury, fraud, lying repeatedly on official documents, and so on).

3.

The Coxes next argue that admitting the videos violated the common law collateral fact rule. This rule limits the admissibility of contradiction evidence by holding "[e]vidence extrinsic to a witness's testimony . . . inadmissible to contradict that witness on a collateral matter." 27 Wright & Gold, *supra*, at 659. "Facts are collateral if they are outside the controversy or are not directly connected with the principal matter or issues in dispute." *Jezdik*, 121 Nev. at 136-37, 110 P.3d at 1063 (internal quotation marks omitted). The Coxes maintain that the bifurcation order limited the trial to liability, not damages, and that, because Cox's (in)ability to walk concerned damages, not liability, the videos were collateral and should have been excluded as such.

This argument considerably overstates the bifurcation order. This is a personal injury case. The bifurcation order did not place the issue of Cox's injuries out of bounds during the first phase of the trial. At the Coxes' request, the order specifically permitted the introduction of evidence "concerning the nature of the injuries claimed" during the liability phase of the trial. And Cox availed himself of this permission in presenting his case, both in his testimony about his agonizing injuries and when he used assistance to walk to and from the witness stand to present that testimony. Although the bifurcation order deferred presentation of medical and other

---

reasoned that the defendant "opened the door" to contradictory extrinsic evidence, although collateral, by placing the bad act in issue. *Id.* at 138-40, 110 P.3d at 1064-65.

specific damages evidence to the second phase of the trial, it did not make the general nature of Cox's injuries irrelevant or "collateral" to the first phase of the trial.

The collateral fact rule concerns relevance and is governed by NRS 48.015 through NRS 48.035, not the categorical prohibition in NRS 50.085(3). *Cf. Jezdik*, 121 Nev. at 138, 110 P.3d at 1064; *see also* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 607.06[3][a] (2d ed. 2021). Evidence is logically relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. "All relevant evidence is admissible" except where otherwise provided by statute or constitution. NRS 48.025(1). Under NRS 48.035, in applying the collateral fact rule, the judge makes "a practical judgment as to whether the importance of the [extrinsic evidence] and the impeachment warrants the expenditure of the additional trial time" its presentation entails. 1 Robert P. Mosteller, *McCormick on Evidence* § 49, at 393 (8th ed. 2020). Such determinations are entrusted to the sound discretion of the district court. *See MEI-GSR Holdings, LLC v. Peppermill Casinos, Inc.*, 134 Nev. 235, 243, 416 P.3d 249, 257 (2018).

Cox's (in)ability to walk without assistance was in issue with respect to both his claimed injuries and his credibility. The district court did not abuse its discretion when it so held. *Sweet v. Pace Membership Warehouse, Inc.*, 795 A.2d 524 (R.I. 2002), is analogous. In *Sweet*, also a personal injury case, the trial court excluded videos showing the plaintiff riding all-terrain vehicles, snowmobiling, and rollerblading, which the defendant offered to impeach the plaintiff's permanent disability claim. After being provided with the videos, the plaintiff chose to cut off his

15

damages claim before the date of the first videos. The Rhode Island Supreme Court deemed the videos admissible and reversed for a new trial, holding that the damages-date restriction "did not lessen the relevance of the evidence for impeaching Sweet's credibility" and "to contradict Sweet's specific assertions that he had been permanently disabled by the accident." *Id.* at 528-29 & n.6; *see also Diamond Offshore Servs., Ltd. v. Williams*, 542 S.W.3d 539, 548, 552 (Tex. 2018) (reversing a judgment on a jury verdict where the district court excluded a video showing the plaintiff engaging in activities he claimed he could no longer pursue; his credibility was at issue as to both liability and damages); *James v. Carawan*, 995 So. 2d 69, 77 (Miss. 2008) (similar).

Cox's credibility was a central defensive issue with respect to both the extent of his injuries and the circumstances that led to his fall. The videos thus did not just bear on damages, but also on liability. *Diamond Offshore Servs. Ltd.*, 542 S.W.3d at 552. Evidence suggesting that a party has feigned or exaggerated injuries to garner sympathy suggests consciousness of a weak case, which is relevant and admissible. 1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 7.2 (2020) (reasoning that "any act evidencing consciousness of the weakness of the litigant's position should be admissible" and is relevant); 2 John H. Wigmore, *Evidence* § 278 (Chadbourn rev. 1979) (reasoning that "a party's falsehood or other fraud in the preparation and presentation of his cause . . . is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit"); *see also* Roger Park & Tom Lininger, *The New Wigmore, A Treatise on Evidence: Impeachment and Rehabilitation* § 4:2, at 203 (Supp. 2021) (noting that contradiction by even

SUPREME COURT
OF
NEVADA

(O) 1947A

collateral evidence is permissible when it "is a fair response to overreaching by the opponent"). Allowing Cox to testify to the nature of his injuries and corroborate that testimony with visible courtroom conduct without allowing respondents to rebut his in-court presentation would be fundamentally unfair. *See* NRS 47.030 (the evidence code serves to "secure fairness in administration . . . to the end that the truth may be ascertained and proceedings justly determined"). The district judge was within the province of his authority when he held, on this record, that "whatever has happened in open court is fair game. And, accordingly, I'll permit the video."

4.

The district court granted the Coxes' initial request to recall Cox to rebut the videos. They then decided against recalling Cox and asked instead to call a medical expert to rebut the videos. The district court denied this request, which the Coxes contend on appeal was an abuse of discretion. NRS 47.040(1)(b) provides that "error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." This court "will not review exclusion of evidence where trial counsel makes no offer of proof" below. *E.g.*, *McCall v. State*, 97 Nev. 514, 516, 634 P.2d 1210, 1212 (1981) (citing *Van Valkenberg v. State*, 95 Nev. 317, 318, 594 P.2d 707, 708 (1979)). Here, the Coxes did not proffer the identity of their requested medical expert or what she or he might testify to, and the issue is accordingly waived. *See Van Valkenberg*, 95 Nev. at 318, 594 P.2d at 708 (holding that this court cannot determine if a party's substantial rights were prejudiced by the trial court's exclusion of evidence under NRS 47.040(1) if trial counsel failed to offer proof of that evidence).

## B.

The Coxes next argue that attorney misconduct during closing arguments entitles them to a new trial under NRCP 59(a)(1)(B) and *Lioce v. Cohen*, 124 Nev. 1, 20, 174 P.3d 970, 982 (2008). "Under *Lioce*, this court decides whether there was attorney misconduct, identifies the applicable legal standard for determining whether a new trial was warranted, and assesses whether the district court abused its discretion in applying that standard." *Gunderson*, 130 Nev. at 74-75, 319 P.3d at 611. Although the abuse-of-discretion standard applies to the order granting or denying a new trial, de novo review applies to the issue of whether attorney misconduct occurred. *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 364, 212 P.3d 1068, 1078 (2009).

Rule 3.4(e) of the Nevada Rules of Professional Conduct (RPC) states that a "lawyer shall not . . . state a personal opinion as to the justness of a cause, the credibility of a witness, [or] the culpability of a civil litigant." On appeal, the Coxes contend that counsel for Backstage, Copperfield, and MGM each made statements during closing arguments that violated RPC 3.4(e). But the Coxes did not object at trial to the statements that Backstage's and Copperfield's counsel made. *See Gunderson*, 130 Nev. at 75, 319 P.3d at 612 ("[F]ailure to object constitutes waiver . . . unless the failure to correct the misconduct would constitute plain error."). These statements, in which Backstage's and Copperfield's counsel invited the jury to consider the contradiction between the way Cox walked in court and in the videos in assessing his credibility and did not offer personal opinions, impugn Cox's character, or otherwise invite the jury to rely on emotion in deciding the case. They amounted to advocacy, not misconduct, and do not establish grounds for a new trial. *See id.* at 76, 319 P.3d at 612 (noting that

SUPREME COURT
OF
NEVADA

(O) 1947A

18

the new trial analysis stops if this court concludes that misconduct did not occur).

But the statements that MGM's lawyer, Popovich, made during closing argument crossed the line between advocacy and misconduct. In concluding his argument, Popovich stated that Cox has "been manipulating this jury from day one with every move he made. You shouldn't believe a word that comes out of his mouth because the only reason to do that is the green box at the end. He just wants a payoff." These statements were improper because they asked the jury to step outside the relevant facts and hold MGM not liable because Cox is a liar who only sued for financial gain. *See Grosjean*, 125 Nev. at 364-65, 212 P.3d at 1079 (holding that attorney committed misconduct by calling respondent a "liar" and appealing to the jury's emotions rather than facts in evidence); *Lioce*, 124 Nev. at 22, 174 P.3d at 984 (holding that attorney committed misconduct by calling a plaintiff's case frivolous and worthless).

The Coxes objected at trial to Popovich's statements—albeit after Popovich finished his closing argument and the jury broke for lunch—and the district court sustained their objection. Under the *Lioce* framework, if a party objects to attorney misconduct at trial, and the district court sustains the objection, it should "admonish the jury and counsel." 124 Nev. at 17, 174 P.3d at 980. The severity and frequency of attorney misconduct dictate whether an admonishment is sufficient to cure alleged prejudice. *See Grosjean*, 125 Nev. at 369, 212 P.3d at 1082 (recognizing that "a single instance of improper conduct might be cured by objection and admonishment"). This court also looks to whether the jury's verdict is well supported by evidence outside of the objected-to misconduct. *Id.*

SUPREME COURT
OF
NEVADA

(O) 1947A

Here, the parties presented the district court with a draft admonishment that the Coxes either drafted or approved. The district court changed the word "impermissible" to "the Court has sustained the objection." The Coxes did not object to this revision. When the jury returned from lunch, the district court gave the admonition, as revised, to the jury:

> Members of the jury, during Mr. Popovich's closing arguments, he stated that Gavin Cox is here because of the "green box at the end," and "he just wants a payoff." Those comments were objected to and [~~impermissible~~] **the Court has sustained the objection**, and I admonish you to disregard those comments and to dismiss them from your mind. You may not use those comments in coming to your decision in this case and must decide this case solely based on the evidence and law.

Despite not objecting to the revision in district court, the Coxes argue on appeal that the admonishment was insufficient because it did not adequately, and separately, rebuke Popovich.

The district court did not abuse its discretion by finding the admonishment sufficient such that no new trial was warranted. The Coxes objected to just a few sentences in Popovich's closing argument during a lengthy seven-week trial. The Coxes approved the form of admonition, which clearly instructed the jury to disregard Popovich's comments. In its verdict, the jury found Backstage and Team Construction not negligent; MGM and Copperfield negligent but not the proximate cause of Cox's fall; and Cox negligent and the cause of his fall. Although Cox disagrees with the verdict, it is sustained by the evidence. The Coxes presented evidence that he fell on a ramp in the runaround that had a slope of 5 degrees, which exceeds the maximum allowed pitch of 4.76 degrees under the building code, on which construction dust had accumulated, causing Cox to slip. But

SUPREME COURT
OF
NEVADA

(O) 1947A

20

respondents presented contrary evidence showing that Cox fell on level ground, approximately 15 feet away from the ramp, and tripped because he was running too fast and not looking where he was going. This evidence permitted the jury to find MGM and Copperfield negligent but not the cause of Cox's fall, and Cox also negligent and the cause of his fall. The jury's verdict is thus supported by tangible record evidence divorced from any emotion that Popovich's inflammatory comments may have inspired. The Coxes fail to establish that Popovich's single instance of misconduct was so extreme as to require a new trial despite the district court's sustained objection and admonishment.

### C.

The Coxes argue that the district court erred in instructing the jury on comparative negligence and should have granted their motion for judgment as a matter of law, striking comparative negligence as an affirmative defense. In Nevada, "[i]ssues of negligence are properly resolved by a jury." *Brascia v. Johnson*, 105 Nev. 592, 595, 781 P.2d 765, 767 (1989). The same holds true for comparative negligence. *Wagon Wheel Saloon & Gambling Hall, Inc. v. Mavrogan*, 78 Nev. 126, 128, 369 P.2d 688, 689-90 (1962) (holding that the issue "is one of fact; it becomes a question of law only when the evidence is of such a character as to support no other legitimate inference").

NRS 41.141 requires the district court to instruct the jury on comparative negligence on request of a defendant when the issue is raised as a bona fide defense:

> In any action to recover damages for death or injury to persons or for injury to property in which comparative negligence is asserted as a defense . . . the judge *shall* instruct the jury that . . . [t]he plaintiff may not recover if the

> plaintiff's comparative negligence . . . is greater than the negligence of the defendant or the combined negligence of multiple defendants.

NRS 41.141(2)(a) (emphasis added). Comparative negligence is a "bona fide issue" when the evidence supports that it is a viable defense. *Buck ex rel. Buck v. Greyhound Lines, Inc.*, 105 Nev. 756, 764, 783 P.2d 437, 442 (1989). Under NRS 41.141, the district court *must* deliver a comparative negligence instruction upon a party's request if a bona fide issue exists. *Verner v. Nev. Power Co.*, 101 Nev. 551, 555-56, 706 P.2d 147, 150 (1985).

Comparative negligence "is conduct on the part of the plaintiff [that] falls below the standard to which [they] should conform for [their] own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm." Restatement (Second) of Torts § 463 (Am. Law Inst. 1965). A plaintiff's duty of care for the plaintiff's own safety is the same as a defendant's—that of a reasonable person under like circumstances. *Id.* § 464. And a defendant's coextensive duty of care to a foreseeable plaintiff does not obviate a plaintiff's duty of reasonable self-care. *See Foster v. Costco Wholesale Corp.*, 128 Nev. 773, 777, 291 P.3d 150, 153 (2012) (holding that a landowner owes a duty of reasonable care to land entrants even if a dangerous condition is open and obvious and reasoning that apportionment of liability depends on the landowner's breach of that duty and comparative fault); Restatement (Second) of Torts § 463; 3 Stuart M. Speiser et al., *American Law of Torts* ¶ 12:49 (Supp. 2021) (explaining that drivers still owe a duty of care to a plaintiff who darts into traffic but that comparative fault principles apply to limit a driver's liability).

At trial, respondents produced evidence showing that Cox voluntarily participated in the illusion and agreed that he could run; Cox drank alcohol before participating in the illusion; Cox was so excited that he chose to continue participating in the illusion, despite that it felt to him like "total pandemonium"; and Cox ran as fast he could, although other witnesses testified that participants were not encouraged to run and typically proceeded at a brisk walk or light jog. Trial testimony conflicted about whether the runaround route was dark: witnesses testified that it was not dark and that Backstage employees held bright lights directing participants through the route, while Cox testified that the route was intermittently dark. *Cf. Tryba v. Fray*, 75 Nev. 288, 293, 339 P.2d 753, 755 (1959) (stating that whether a plaintiff is contributorily negligent where she finds herself in a dark and unfamiliar situation but proceeds anyway is a question of fact for the jury). But although Cox testified that the route was dark and he lacked adequate direction, Cox also said that he did not look at the ground while running at full speed. *See Joynt v. Cal. Hotel & Casino*, 108 Nev. 539, 544, 835 P.2d 799, 802 (1992) (finding comparative fault was a viable defense where a plaintiff did not look before stepping backward).

Respondents further produced two expert witnesses who each reconstructed the fall and testified that Cox tripped on a flat surface when he caught the toe of his shoe on the ground. The experts testified that construction dust would not have interrupted Cox's gait to cause the toe catch and subsequent fall. The Coxes point to MGM's NRCP 30(b)(6) witness, Mark Habersack, who testified that he was not aware of anything that Cox did wrong during the illusion. But this testimony is not conclusive; rather, it is another piece of evidence for the jury to consider when determining comparative fault. *See Anderson v. Baltrusaitis*, 113 Nev. 963,

965, 944 P.2d 797, 799 (1997) (holding that comparative negligence is a question of fact for the jury); *see also Tryba,* 75 Nev. at 295, 339 P.2d at 757 (remanding because contributory negligence should have remained a question for the jury). Respondents produced significant evidence to offset Habersack's testimony and show that Cox may have acted unreasonably by running as fast as he could, through allegedly dark corridors, without knowing where he was going, culminating in a trip and fall. Therefore, respondents produced enough evidence to raise a bona fide issue of Cox's comparative negligence, and the district court did not abuse its discretion by delivering NRS 41.141's mandatory instruction. The district court therefore properly denied the Coxes' motions for judgment as a matter of law or a new trial on these grounds.

D.

NRCP 59(a)(1)(E) provides that "manifest disregard by the jury of the instructions of the court" can constitute grounds for a new trial. Invoking this rule, the Coxes next argue that they are entitled to a new trial because the jury manifestly disregarded the district court's proximate cause instruction and ignored applicable law by concluding that MGM and Copperfield were negligent but not the proximate cause of Cox's injuries because no force intervened to sever the causal link. *See Price v. Sinnott,* 85 Nev. 600, 606, 460 P.2d 837, 840 (1969). But this court presumes that the jury followed the court's instructions, *Motor Coach Indus., Inc. v. Khiabani,* 137 Nev., Adv. Op. 42, 493 P.3d 1007, 1015 (2021), and will uphold a jury's verdict if "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Prabhu v. Levine,* 112 Nev. 1538, 1543, 930 P.2d 103, 107 (1996); *see also Allstate Ins. Co. v. Miller,* 125 Nev. 300, 308, 212 P.3d 318, 324 (2009). And to establish manifest disregard of the

instructions, the movant must demonstrate that, "had the jurors properly applied the instructions of the court, it would have been impossible for them to reach the verdict which they reached." *Weaver Bros., Ltd. v. Misskelley*, 98 Nev. 232, 234, 645 P.2d 438, 439 (1982); *McKenna v. Ingersoll*, 76 Nev. 169, 174-75, 350 P.2d 725, 728 (1960).

The record does not support that it was impossible for the jury to have followed the jury instructions and returned the verdict it did. As discussed, the evidence permitted the jury to find that MGM was negligent because its outdoor ramp violated the building code, and because of this, Copperfield was negligent for taking audience participants past the ramp. But while Cox testified that he slipped and fell on the ramp, respondents presented contrary evidence that he fell 15 or more feet away from the ramp, on level ground. This evidence supports the finding the jury made that MGM and Copperfield were negligent, but their negligence did not cause Cox to fall. And, as the preceding discussion of comparative negligence demonstrates, the evidence also supported, if it did not compel, a finding that Cox was comparatively negligent and the cause of his own fall.

Based on these divergent accounts of the incident, the jury weighed the evidence and concluded that respondents' negligence was not the proximate cause of Cox's fall and resulting injuries, *Taylor v. Silva*, 96 Nev. 738, 741, 615 P.2d 970, 971 (1980) ("Proximate cause is any cause[,] which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred.") (quoting *Mahan v. Hafen*, 76 Nev. 220, 225, 351 P.2d 617, 620 (1960)), which is within its province to do. *Barnes v. Delta Lines, Inc.*, 99 Nev. 688, 690, 669 P.2d 709, 711 (1983) (holding that

proximate cause is a question of fact for the jury). Otherwise stated, the Coxes failed to establish a causal link based on the facts in evidence, thus missing a step while reaching for their conclusion of the jury's illogic. *See Rickard v. City of Reno*, 71 Nev. 266, 270-72, 288 P.2d 209, 210-11 (1955) (holding that plaintiff failed to establish proximate cause as a matter of law because she did not produce evidence showing that a depression in a city sidewalk—and the dirt, silt, etc. collected within it—caused her fall). Based on the trial evidence, the jury could both comply with the court's instructions and conclude, as it did, that respondents were negligent but not the proximate cause of Cox's injuries. The jury did not disregard the court's instructions or applicable law, and the district court therefore did not abuse its discretion in denying the Coxes' motion for a new trial on these grounds.

E.

Finally, at trial and in the jury's presence, respondents moved for a jury view of the runaround route, which the district court granted. The Coxes argue that they suffered prejudice warranting a new trial because the district court did not explain its reasoning when it later canceled the jury view, thus implying to the jury (in the Coxes' estimation) that the Coxes caused the cancelation because they had something to hide. The Coxes did not object to the district court's cancelation of the jury view, ask the district court to explain to the jury why it canceled the jury view, or otherwise raise this issue below, and we decline to address it in the first instance. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

Supreme Court
of
Nevada

(O) 1947A

For these reasons we affirm the district court's judgment on the jury's special verdict for respondents and the district court's order denying the Coxes' motions for judgment as a matter of law or a new trial.

_____ , J.
Pickering

We concur:

_____ , J.
Hardesty

_____ , J.
Cadish

_____ , J.
Herndon

_____ , Sr. J.
Gibbons

STIGLICH, J., with whom PARRAGUIRRE, C.J., agrees, dissenting:

On the record before us, I believe the district court abused its discretion by admitting sub rosa surveillance videos that were not relevant to liability and were barred by the collateral fact rule. I respectfully dissent because this evidence should not have been presented in the liability phase, rendering the outcome unfair.

*In light of the bifurcation, the videos were not relevant to liability*

The trial here was bifurcated—at respondents' request—such that the only question at issue during this proceeding was liability. *See Verner v. Nev. Power Co.*, 101 Nev. 551, 554, 706 P.2d 147, 150 (1985) (providing that a separate proceeding on liability may be held only if "the issue of liability [is] separate and distinct from the issue of damages"). Contrary to the majority's conclusion, the bifurcation order was not "flexible." Respectfully, that is simply not true. Respondents moved to bifurcate the trial because, in their view,

> [t]he issue of liability is separate and distinct from the issue of damages as the evidence presented during the liability phase will focus solely on the execution of the [i]llusion to the point of Mr. Cox's fall while the damages phase will focus solely on the events after Mr. Cox's fall.

The district court granted Respondents' bifurcation motion and prohibited the Coxes from adducing any "evidence as to the nature or extent of Mr. Cox's alleged injuries" stemming from the fall during the liability phase. The order allowed the Coxes to present evidence only as to Cox's injuries generally at the time of the fall and "to establish that Mr. Cox may have less than a clear recollection of the events of the night of the fall." The record plainly contradicts the majority's framing

SUPREME COURT
OF
NEVADA

(O) 1947A

During the liability phase, Cox's injuries were mentioned in the two ways—and only the two ways—allowed by the bifurcation order. First, the district court instructed the jury that Cox alleged a brain injury, "which may affect the way he testifies during this trial. You may take this allegation into consideration when you are evaluating his testimony." This instruction did not presume that Cox actually *had* a brain injury, and there was no sworn testimony regarding a brain injury. Second, Cox testified to his pain and injuries only within the context of describing the fall allegedly caused by respondents' negligence and its immediate aftermath. As in any personal injury trial, Cox's testimony regarding his initial experience of injury was relevant to whether respondents were liable.

The majority, however, conflates Cox's testimony about the pain when he fell with the extent of his injuries at the time of trial, misstating the record. For example, the majority correctly observes that Cox testified to the injuries incurred when he fell. But it uses that testimony to conclude that Cox "conveyed to the jury that the injuries he sustained in his fall left him unable to walk unassisted." Cox did no such thing: in accordance with the bifurcation order, he mentioned the pain he felt after his fall, not during the trial.

While Cox's current physical health and the extent of his injury would be relevant to determining damages, they were not relevant to whether respondents breached a duty of care owed to Cox, i.e., liability. The fact that testimony and the jury instruction on Cox's original experience of being hurt and "the way he testifies" touch on injuries in general does not place the injuries at issue during the liability phase.

The majority's view that nontestimonial behavior in court may constitute evidence rendering the videos relevant is mistaken. The extent

of Cox's injuries was not at issue during the liability phase, and his walking with assistance was thus not relevant to a matter at issue. The majority's invocation of *Sweet v. Pace Membership Warehouse, Inc.*, 795 A.2d 524 (R.I. 2002), does not support a contrary conclusion. Unlike here, the defendant in that case "conceded liability, and the case proceeded to trial solely on the issue of damages." *Id.* at 526. Nontestimonial videos there were relevant in a way that they were not here. These videos were not relevant, and the district court should not have admitted them.

*The videos were barred by the collateral fact rule*

The collateral fact rule also should have barred admission of these videos. This rule provides that extrinsic evidence of specific instances of a witness's conduct, other than a criminal conviction, may not be proffered to show the witness's credibility or lack thereof. NRS 50.085(3). A fact is collateral when it is "outside the controversy, or [is] not directly connected with the principal matter or issue in dispute." *Lobato v. State*, 120 Nev. 512, 518, 96 P.3d 765, 770 (2004) (quoting *Black's Law Dictionary* 262 (6th ed. 1990)).

Here, Cox's ability or inability to walk on his own was collateral to the proceedings at the liability phase of trial. The collateral fact rule exists to center the jury's attention on the primary questions before it; at this stage of the trial, the primary question was whether respondents negligently caused Cox's injuries. Respondents did not proffer the videos to rebut the Coxes' allegation of negligence, but rather to imply that Cox faked a need for assistance to elicit the jury's sympathy and thus was not credible. This tenuous connection makes the question of whether Cox could walk without assistance collateral.

The district court overruled the Coxes' objection to the videos, concluding "that whatever has happened in open court is fair game" and admitting the videos.[1] However, this misunderstands the scope of the collateral fact rule, which may bar impeachment even where sworn testimony has been given. *See Rembert v. State*, 104 Nev. 680, 683, 766 P.2d 890, 892 (1988) (holding that extrinsic evidence that the defendant was fired from a job he testified to leaving on his own terms was collateral and inadmissible when it went to the defendant's credibility rather than whether defendant committed the crime). "[W]hatever has happened in open court" is too broad a characterization of what conduct may be impeached. Here, whether Cox could walk without assistance was collateral, even if it may have been relevant to his credibility in general. The district court again should not have admitted the video evidence.[2]

*The videos were inadmissible under the specific contradiction exception to the collateral fact rule*

The specific contradiction exception outlined in *Jezdik v. State*, 121 Nev. 129, 110 P.3d 1058 (2005), does not apply here. The exception provides that "false statements on direct examination trigger or 'open the door' to the curative admissibility of specific contradiction evidence." *Id.* at

---

[1]The trial record memorializes only that Cox walked to and from the witness stand with assistance from the marshal and his attorney. The arguments made in closing and on appeal regarding other instances of Cox using assistance in the courtroom are not supported by evidence in the record.

[2]It is noteworthy that while the majority suggests a number of reasons the evidence may have been admissible, respondents proffered impeachment as the sole basis to admit this evidence.

138, 110 P.3d at 1064. The exception permits extrinsic evidence that specifically rebuts an "adversary's proffered evidence of good character," but this must "squarely contradict" the adverse testimony. *Id.* at 139, 110 P.3d at 1065; *see also Newman v. State*, 129 Nev. 222, 235-36, 298 P.3d 1171, 1181 (2013) (barring extrinsic testimony about a specific altercation that was fundamentally distinct from the offense charged and not offered to rebut a particular assertion).

*Jezdik* was born out of fairness considerations. *Jezdik* provided a narrow exception to prevent "the shield provided by NRS 50.085(3)" being used as a sword "for a defendant to purposefully, or even inadvertently, introduce evidence giving the jury a false impression through an absolute denial of misconduct and then frustrate the State's attempt to contradict this evidence through proof of specific acts." *Jezdik*, 121 Nev. at 139, 110 P.3d at 1065. When a party seeks to use extrinsic evidence to contradict testimony that is not a factual assertion made on direct examination, the collateral fact rule bars its admission.

I cannot find any rebuttable testimony regarding Cox's ability to walk. Respondents contend that, in using assistance to walk, Cox made specific nonverbal assertions during trial that they are permitted to rebut. They point out that NRS 51.045(2) defines a "statement" to include "[n]onverbal conduct of a person, if it is intended as an assertion." "Assertive conduct," however, means nonverbal behavior intended to functionally replace a spoken assertion (for example, a nod in response to a question, or a pointed finger). *See Assertive conduct, Black's Law Dictionary* (11th ed. 2019). Cox's walking with assistance was not a rebuttable factual assertion because it was not made in lieu of a statement.

While the majority regards Cox's walking with assistance as assertive conduct, it offers no Nevada law supporting that position. It cites instead hornbook law on federal practice that in turn relies on distinguishable authorities, namely an out-of-state decision that concluded that wearing a Purple Heart pin on the witness stand was assertive conduct, *United States v. Hinkson*, 526 F.3d 1262, 1282-83 (9th Cir. 2008), *rev'd* 585 F.3d 1247 (9th Cir. 2009), and other decisions standing for the general principle that a factfinder may consider the attitude and conduct of the witness, *e.g.*, *United States v. Shonubi*, 895 F. Supp. 460, 480 (E.D.N.Y. 1995); *Henriod v. Henriod*, 89 P.2d 222, 225 (Wash. 1938). But these cases are all examples of conduct on the witness stand, which is distinguishable from Cox's "conduct" here, walking to and from the witness stand with assistance. Further, these cases do not support the proposition for which they are implicitly used, that nonverbal conduct in this case (walking with assistance) is assertive in the same way as pointing a finger at someone or nodding one's head.

Cox's nonverbal actions were not rebuttable testimony simply because juries may consider a witness's demeanor or mannerisms. These observable qualities—such as the manner of walking, crying, being nervous, or laughing—do not constitute testimony or statements on their own. Treating such details as evidence ripe for rebuttal would invite a party to seek out all matter of irrelevant information, so long as it may be patched together, paying little heed to context, to deride the other side's credibility. Opening the door to contesting all sorts of largely unreviewable courtroom conduct would result in trials that would be civil in name only.

Further, the principle outlined in *Jezdik* relates to a party "opening the door" by eliciting false statements on *direct* examination. The

cross-examining party cannot elicit testimony on a subject (here, Cox's current ability to walk) outside the scope of direct examination only for the purposes of impeaching that testimony with extrinsic evidence. If Cox *had* proffered this information on direct examination—that he had been entirely unable to walk without help since his injury—respondents' arguments under *Jezdik* might have merit. As it is, this argument fails because the courtroom conduct here was not impeachable testimony.[3]

The majority, however, takes this mistaken approach even further. It states that "the collateral fact rule concerns relevance and is governed by NRS 48.015 through NRS 48.035, not the categorical prohibition in NRS 50.085(3)." This, it cannot do. This court applies the laws as written by the Nevada Legislature. *See Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011) (observing that "[i]f the statute's language is clear and unambiguous, we enforce the statute as written"). The Legislature has provided that even relevant evidence may be inadmissible where otherwise provided by statute or the state or federal constitution. NRS 48.025(1). NRS 50.085(3) states one of those limitations, prohibiting the introduction of extrinsic evidence to demonstrate specific instances of a witness's conduct "for the purpose of attacking or supporting the witness's credibility." In my view, the majority errs by disregarding the intent of the Legislature.

---

[3]Respondents did not argue below that the videos were admitted to specifically contradict Cox's statements on cross-examination regarding his need for assistance while walking, and that argument is therefore waived. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

*The improper admission of the sub rosa surveillance videos warranted a new trial*

I maintain further that the improper admission of the sub rosa surveillance videos is reversible error because I do not believe the jury would have found respondents not liable for Cox's injury had the videos not been admitted. The videos were shown to the jury to rest respondents' case-in-chief and played again during closing arguments. During those arguments, Cox was described as "deceiving the jury since day one" and "manipulating the jury . . . with every move he's made." The jury was told to disregard the entirety of Cox's testimony due to "the fact that he faked it, the fact that he attempted to deceive you." Respondents' counsel argued that, because of the videos, "you shouldn't believe a word that comes out of his mouth . . . he just wants a payoff" and "the Cox family was part of the deception." The videos' importance to the case was emphasized repeatedly in statements like "the tapes speak for themselves. The tapes speak the truth." One attorney remarked, "[Cox's attorney] should be praying because the jury saw what they saw." Another told the jury, "I saw the way some of you reacted when you first saw this. I know you aren't going to be fooled."

In short, closing argument became dominated by the allegation that Cox had made a calculated, deceitful effort to manipulate the jury, only to be dramatically exposed through surveillance. The jury members were told that they would be fools not only if they believed that Cox needed help walking, but if they believed even one word he had told them. Cox's testimony that he had been rushed through darkness, slipped, and fell was integral to the issue of liability. The jury found Cox completely responsible for his own injuries; it might reasonably have reached a different result if the videos had not been admitted. *See Wyeth v. Rowatt*, 126 Nev. 446, 465, 244 P.3d 765, 778 (2010) (concluding that prejudicial error occurs when "the

SUPREME COURT
OF
NEVADA

(O) 1947A

error affects the party's substantial rights so that, but for the alleged error, a different result might reasonably have been reached"). Therefore, I would reverse on this issue.

*The district court committed other, non-reversible errors*

The district court committed two other mistakes that warrant discussion, even though they do not, alone, rise to the level of reversible error. First, I believe that the district court erred in its comparative negligence instruction. Second, the district court did not properly admonish Popovich for his attorney misconduct during closing arguments.

*The district court incorrectly gave the comparative negligence instruction*

Respondents argue five reasons why Cox was comparatively negligent: (1) Cox willingly participated in the magic trick, (2) Cox negligently proceeded down a dark path, (3) Cox was running, (4) Cox failed to look at the ground, and (5) Cox tripped on his own feet. I do not believe these allegations warranted a comparative negligence instruction, as they did not support a theory that Cox acted unreasonably and that his negligence was a substantial factor in bringing about his injury. *See Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 859-60, 124 P.3d 530, 546 (2005) (discussing when comparative negligence applies).

Notably, respondents organized the magic show and created the conditions in which they contend Cox was negligent. They maintain both that Cox was lying about the conditions being dark, rushed, or unsafe, and that Cox's running along the dark, unsafe path was unreasonable and negligent. But respondents concede in their briefing that volunteers were asked whether they can run before they participate in the show. They try to have it both ways by arguing that Cox was negligent because he was running as part of a show in which the ability to run is, as respondents state

in their brief, "the most important" question asked of prospective volunteers. Further, respondents' experts contradicted their position on appeal: MGM's head of risk management admitted that Cox did not act carelessly or do anything wrong while performing the illusion. Therefore, I do not believe that respondents made an adequate showing that Cox acted unreasonably or in a negligent manner.

*The district court did not admonish Popovich for his misconduct*

I agree with the majority that Popovich committed attorney misconduct in closing argument, and though I disagree that the district court's admonition was sufficient, I concur that relief is not warranted on this basis. On a meritorious objection to attorney misconduct, "the district court should sustain the objection and admonish the jury and counsel, respectively, by advising the jury about the impropriety of counsel's conduct and reprimanding or cautioning counsel against such misconduct." *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 68, 75, 319 P.3d 606, 612 (2014).

The Coxes timely objected, the parties argued the issue, and the district court found the comments improper. The district court discussed the proposed admonition with counsel, specifically saying "I'm not inclined to use the term 'misconduct' or 'impropriety' or anything like that."

The district court noted the comments and instructed the jury to disregard them. The jury, however, was not advised that the conduct had been improper, only that it had been objected to and sustained. Merely telling the jury to disregard without making plain that Popovich's comments were inappropriate does not provide the jury with suitable guidance. Nor did the district court reprimand or caution Popovich beyond a cursory remark that his statements "appear[ ] to me to be synonymous" with a statement deemed misconduct in another case. The district court's admonition was inadequate under *Gunderson*.

Supreme Court
OF
Nevada

(O) 1947A

10

Nevertheless, Cox did not demonstrate that a more appropriate admonition would have affected the verdict. As the majority notes, the misconduct was a short portion within lengthy closing arguments by multiple attorneys. Popovich inappropriately impugned Cox's credibility and motive. These facts, however, did not rise to the level of misconduct affecting the verdict, and thus I would not reverse on this issue. *See Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 365, 212 P.3d 1068, 1079 (2009) (considering "the scope, nature, and quantity of [attorney] misconduct as indicators of the verdict's reliability").

I believe that the court has erred in resolving this appeal. I respectfully dissent.

_____, J.
Stiglich

I concur:

_____, C.J.
Parraguirre